Filed
D.C. Superior Court
02/06/2018 19:00PM
Clerk of the Court

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

C.I. Energia Solar S.A. E.S. Windows

vs

Ranger Specialized Glass, Inc., et al.

Case Number: _____

Date: _____

☐ One of the defendants is being sued
in their official capacity.

| | |
|---|---|
| Name: *(Please Print)*    Shawn C. Whittaker, Esq. | Relationship to Lawsuit |
| Firm Name:    Whittaker & Associates, PC | ☒ Attorney for Plaintiff |
| Telephone No.:    Six digit Unified Bar No.:<br>301-838-4502         468533 | ☐ Self (Pro Se)<br>☐ Other: _____ |

TYPE OF CASE:   ☒ Non-Jury      ☐ 6 Person Jury      ☐ 12 Person Jury

Demand: $   1,161,424.35      Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: _____    Judge: _____    Calendar #: _____

Case No.: _____    Judge: _____    Calendar #: _____

---

NATURE OF SUIT:   *(Check One Box Only)*

## A. CONTRACTS                                    COLLECTION CASES

☒ 01 Breach of Contract
☐ 02 Breach of Warranty
☐ 06 Negotiable Instrument
☐ 07 Personal Property
☐ 13 Employment Discrimination
☐ 15 Special Education Fees

☐ 14 Under $25,000 Pltf. Grants Consent
☐ 17 OVER $25,000 Pltf. Grants Consent
☐ 27 Insurance/Subrogation
     Over $25,000 Pltf. Grants Consent
☐ 07 Insurance/Subrogation
     Under $25,000 Pltf. Grants Consent
☐ 28 Motion to Confirm Arbitration
     Award (Collection Cases Only)

☐ 16 Under $25,000 Consent Denied
☐ 18 OVER $25,000 Consent Denied
☐ 26 Insurance/Subrogation
     Over $25,000 Consent Denied
☐ 34 Insurance/Subrogation
     Under $25,000 Consent Denied

## B. PROPERTY TORTS

☐ 01 Automobile
☐ 02 Conversion
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

☐ 03 Destruction of Private Property
☐ 04 Property Damage

☐ 05 Trespass

## C. PERSONAL TORTS

☐ 01 Abuse of Process
☐ 02 Alienation of Affection
☐ 03 Assault and Battery
☐ 04 Automobile- Personal Injury
☐ 05 Deceit (Misrepresentation)
☐ 06 False Accusation
☐ 07 False Arrest
☐ 08 Fraud

☐ 10 Invasion of Privacy
☐ 11 Libel and Slander
☐ 12 Malicious Interference
☐ 13 Malicious Prosecution
☐ 14 Malpractice Legal
☐ 15 Malpractice Medical (Including Wrongful Death)
☐ 16 Negligence- (Not Automobile,
     Not Malpractice)

☐ 17 Personal Injury- (Not Automobile,
     Not Malpractice)
☐ 18 Wrongful Death (Not Malpractice)
☐ 19 Wrongful Eviction
☐ 20 Friendly Suit
☐ 21 Asbestos
☐ 22 Toxic/Mass Torts
☐ 23 Tobacco
☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE        IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

- [ ] 01 Accounting
- [ ] 02 Att. Before Judgment
- [ ] 05 Ejectment
- [ ] 09 Special Writ/Warrants
  (DC Code § 11-941)
- [ ] 10 Traffic Adjudication
- [ ] 11 Writ of Replevin
- [ ] 12 Enforce Mechanics Lien
- [ ] 16 Declaratory Judgment

- [ ] 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- [ ] 18 Product Liability

- [ ] 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- [ ] 29 Merit Personnel Act (OHR)
- [ ] 31 Housing Code Regulations
- [ ] 32 Qui Tam
- [ ] 33 Whistleblower

**II.**

- [ ] 03 Change of Name
- [ ] 06 Foreign Judgment/Domestic
- [ ] 08 Foreign Judgment/International
- [ ] 13 Correction of Birth Certificate
- [ ] 14 Correction of Marriage
  Certificate
- [ ] 26 Petition for Civil Asset Forfeiture (Vehicle)
- [ ] 27 Petition for Civil Asset Forfeiture (Currency)
- [ ] 28 Petition for Civil Asset Forfeiture (Other)

- [ ] 15 Libel of Information
- [ ] 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- [ ] 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- [ ] 21 Petition for Subpoena
  [Rule 28-I (b)]
- [ ] 22 Release Mechanics Lien
- [ ] 23 Rule 27(a)(I)
  (Perpetuate Testimony)
- [ ] 24 Petition for Structured Settlement
- [ ] 25 Petition for Liquidation

**D.  REAL PROPERTY**

- [ ] 09 Real Property-Real Estate
- [ ] 12 Specific Performance
- [ ] 04 Condemnation (Eminent Domain)
- [ ] 10 Mortgage Foreclosure/Judicial Sale
- [ ] 11 Petition for Civil Asset Forfeiture (RP)

- [ ] 08 Quiet Title
- [ ] 25 Liens: Tax / Water Consent Granted
- [ ] 30 Liens: Tax / Water Consent Denied
- [ ] 31 Tax Lien Bid Off Certificate Consent Granted

_____
Attorney's Signature

3/6/18
_____
Date

### IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
### (CIVIL DIVISION)

C.I. ENERGIA SOLAR S.A. E.S. WINDOWS     \*
Avenida Circunvalar a 100 mts de la via 40    \*
Barrio Las Flores     \*
Barranquilla - Colombia     \*
    \*
    Plaintiff,     \*
    \*
    v.     \* Case No.
    \*
RANGER SPECIALIZED GLASS, INC.     \*
19031 Aldine Westfield Road     \*
Houston, TX 77073     \*
    \*
Serve:  Registered Agent     \*
    Registered Agents, Inc.     \*
    1150 Connecticut Ave., NW, Ste. 900     \*
    Washington, DC 20036     \*
    \*
AND     \*
    \*
RANGER GLASS EAST COAST, INC.     \*
42630 John Mosby Highway     \*
Chantilly, VA 20152     \*
    \*
Serve:  Registered Agent     \*
    Legalinc. Corporate Services, Inc.     \*
    1900 Campus Commons Drive, Ste. 100     \*
    Reston, VA 20191     \*
    \*
AND     \*
    \*
FOULGER-PRATT CONTRACTING, LLC     \*
12435 Potomac Avenue, Suite 200     \*
Potomac, MD 20854     \*
    \*
Serve:  Registered Agent     \*
    Corporation Service Company     \*
    1090 Vermont Avenue, NW     \*
    Washington, DC 20005     \*
    \*
AND     \*
    \*
    \*

COMPLAINT - 1

BERKLEY INSURANCE COMPANY                     *
475 Steamboat Road                            *
Greenwich, CT 06830                           *
                                              *
Serve:  Stephen C. Taylor, Commissioner       *
        Department of Insurance, Securities,   *
            and Banking                        *
        1050 First Street, NE, Ste. 801        *
        Washington, DC 20002                   *
                                              *
AND                                           *
                                              *
TRAVELERS CASUALTY AND                        *
        SURETY COMPANY OF AMERICA             *
One Tower Square                              *
Hartford, CT 06183                            *
                                              *
Serve:  Registered Agent                       *
        Corporation Service Company-CSC        *
        1090 Vermont Ave., Ste. 430            *
        Washington, DC 20005                   *
                                              *
        Defendant(s).                          *

## COMPLAINT

COMES NOW the Plaintiff C.I. Energia Solar S.A. E.S. Windows (hereinafter "CIES"), by

and through counsel Shawn C. Whittaker, Scott M. Myers, and Whittaker & Associates, P.C., and

submits this Complaint against Defendants Ranger Specialized Glass, Inc. (hereinafter "Ranger"),

Ranger Glass East Coast, Inc. (hereinafter "Ranger East"), Foulger-Pratt Contracting, LLC

(hereinafter "Foulger-Pratt"), Berkley Insurance Company (hereinafter "Berkley"), and Travelers

Casualty and Surety Company of America (hereinafter "Travelers"), and in support thereof states as

follows:

COMPLAINT - 2

WHITTAKER & ASSOCIATES, P.C.
1010 Rockville Pike-Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

## PARTIES AND JURISDICTION

1.      CIES is a Colombian corporation with a principal place of business located at Avenida Circunvalar a 100 mts de la via 40, Barrio Las Flores, Barranquilla-Colombia.  CIES is a manufacturer of window and door systems.

2.      E.S. Windows, LLC (hereinafter "ESW") is a wholly-owned subsidiary of CIES and is a Florida limited liability company.  CIES sometimes uses ESW to facilitate and secure sales of CIES' products in the United States, which materials are supplied by CIES.

3.      Ranger is a Texas corporation registered to do business in the District of Columbia with a principal office located at 19031 Aldine Westfield Road, Houston, TX 77073.  Ranger is a glass and metalworking subcontractor on construction projects.

4.      Ranger East is a Virginia corporation not registered to do business in the District of Columbia with a principal place of business at 42630 John Mosby Highway, Chantilly, VA 20152.  Ranger East is a glass and metalworking subcontractor on construction projects.

5.      Ranger and Ranger East use the names interchangeably.

6.      Berkley is a Delaware corporation with a principal office located at 475 Steamboat Road, Greenwich, CT 06830.  Berkley is an insurance provider.

7.      Foulger-Pratt is a Maryland corporation registered to do business in the District of Columbia with a principal office located at 124335 Potomac Avenue, Suite 200, Potomac, MD 20854.  Foulger-Pratt is a general contractor.

8.      Travelers is a Connecticut corporation with a principal office located at One Tower Square, Hartford, CT 06183.  Travelers is an insurance provider.

9.      The acts or omissions giving rise to CIES' claims occurred in the District of Columbia.

10.      This Court has jurisdiction over this action pursuant to D.C. Code Annotated, § 13-423.

WHITTAKER & ASSOCIATES, P.C.
1010 Rockville Pike-Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

**FACTS**

11.     CIES incorporates the preceding allegations as if fully stated herein and further states the following:

12.     On or about April 10, 2014, Foulger-Pratt entered into a contract with Art Place at Ft Totten, LLC (hereinafter "Owner") to complete construction on the Art Place at Fort Totten Project located at 400 Galloway Street, NE, Washington, DC 20011 (hereinafter "Project").

13.     On September 8, 2014, Foulger-Pratt, as principal, and Travelers, as surety, executed a payment bond for the protection of subcontractors and sub-subcontractors who supply labor and materials to the Project. *See Payment Bond No. 106033098 attached as Ex. 1.*

14.     On or about November 12, 2014, Ranger entered into a subcontract with Foulger-Pratt on the Project.

15.     In connection with the Project, Ranger, as principal, and Berkley, as surety, executed a payment bond for the protection of all subcontractors who supply labor and materials within the scope of the subcontract to the Project. *See Payment Bond No. 0189994 attached as Ex. 2.*

16.     On or about October 28, 2015, CIES provided a Quotation to Ranger and/or Ranger East, wherein CIES was to provide window systems to Ranger for the Project. *See Quote attached as Ex. 3.*

17.     On or about October 30, 2015, Ranger and/or Ranger East issued a Purchase Order to CIES for the materials with a total price of $4,430,291.00. *See Purchase Order attached as Ex. 4.*

18.     CIES confirmed the price and returned a revised Purchase Order to Ranger and/or Ranger East along with CIES' Terms of Sale. *See Terms and Revised Purchase Order attached as Ex. 5.*

COMPLAINT - 4

19.     CIES supplied materials to the Project from on or about September 5, 2016 through July 29, 2017.

20.     CIES invoiced Ranger and/or Ranger East for the materials supplied to the Project.

21.     The total value of the materials which CIES supplied for which Ranger and/or Ranger East did not remit payment is $1,161,424.35. *See Statement attached as Ex. 6.*

22.     Despite demand, Ranger and/or Ranger East have not remitted payment in full to CIES for the materials supplied to the Project.

23.     On August 10, 2017, CIES caused to be sent a Proof of Claim and Notice of Bond Claim to Berkley. *See Notice and Proof of Claim attached as Ex. 7.*

24.     On October 20, 2017, CIES caused to be sent, by certified mail, return receipt requested, to Foulger-Pratt and Travelers a Notice of Payment Bond Claim. *See Notice attached as Ex. 8; see USPS Tracking Reports attached collectively as Ex. 9.*

25.     On October 23, 2017, Travelers received the Notice. *See Ex. 9.*

26.     Pursuant to § 13 of the Payment Bond, CIES sent its Notice to Foulger-Pratt's address listed on the Payment Bond; however, CIES' Notice was returned as unable to forward. *See Exs. 1 and 8.*

27.     Pursuant to § 13 of the Payment Bond, on October 25, 2017, CIES provided Foulger-Pratt with actual notice of CIES' claim via electronic mail. *See Email attached as Ex. 10.*

28.     Despite demand, Ranger, Ranger East, Foulger-Pratt, Berkley, and Travelers have not paid CIES the balance of $1,161,424.35.

**WHITTAKER & ASSOCIATES, P.C.**
1010 Rockville Pike-Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

**COUNT I**
**PAYMENT BOND CLAIM,**
**(AS TO FOULGER-PRATT AND TRAVELERS)**

29.     CIES incorporates the preceding allegations as if fully stated herein and further states the following:

30.     On September 8, 2014, Foulger-Pratt, as principal, and Travelers, as surety, executed a payment bond for the protection of all subcontractors and sub-subcontractors who supplied labor and materials to the Project. *See Ex. 1.*

31.     CIES supplied materials to Ranger and/or Ranger East, a subcontractor of Foulger-Pratt, and it is therefore a proper claimant under § 16.2 of the bond.  See Ex. 1 at § 16.2.

32.     On October 20, 2017, CIES, through counsel, sent a Notice of Payment Bond Claim to Travelers and Foulger-Pratt. *See Exs. 8 and 9.*

33.     Travelers and Foulger-Pratt both received the Notice of Payment Bond Claim. *See Exs. 9 and 10.*

34.     CIES is bringing this action against Foulger-Pratt and Travelers within one year of its last date of performance to collect monies owing to CIES for materials supplied on the Project.

35.     CIES has met all conditions precedent to recover under the payment bond prior to filing suit.

36.     Despite receipt of notice of CIES' claim, neither Foulger-Pratt nor Travelers has remitted payment of $1,161,424.35 to CIES for materials supplied to the Project.

WHEREFORE, Plaintiff C.I. Energia Solar S.A. E.S. Windows demands judgment against Defendants Foulger-Pratt Contracting, LLC and Travelers Casualty and Surety Company of America, jointly and severally, in the following amounts:

A.     Compensatory damages in the amount of $1,161,424.35;

WHITTAKER & ASSOCIATES, P.C.
1010 Rockville Pike-Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

B.     Reasonable attorneys' fees;

C.     Pre-judgment and post-judgment interest at the legal rate;

D.     Costs of this action; and

E.     Any other remedy this Court deems necessary and proper.

**COUNT II**
**PAYMENT BOND CLAIM**
**(AS TO RANGER AND BERKLEY)**

37.    CIES incorporates the preceding allegations as if fully set forth herein and further states the following:

38.    Ranger, as principal, and Berkley, as surety, executed a payment bond for the protection of all subcontractors who supplied labor and materials to the Project within the scope of the subcontract between Ranger and Foulger-Pratt. *See Ex. 2.*

39.    CIES supplied materials to the Project within the scope of the subcontract between Ranger and Foulger-Pratt and is therefore a beneficiary under the bond.

40.    On August 10, 2017, CIES sent a Notice of Payment Bond Claim and Proof of Claim to Berkley. *See Ex. 7.*

41.    Despite notice of CIES' claim, Ranger and Berkley have not remitted payment of $1,161,424.35 to CIES.

42.    CIES has met all conditions precedent to recover under the bond prior to filing suit.

WHEREFORE, Plaintiff C.I. Energia Solar S.A. E.S. Windows demands judgment against Defendants Ranger Specialized Glass, Inc. and Berkley Insurance Company, jointly and severally, in the following amounts:

A.     Compensatory damages in the amount of $1,161,424.35;

B.     Reasonable attorneys' fees;

COMPLAINT - 7

C.       Pre-judgment and post-judgment interest at the legal rate;

D.       Costs of this action; and,

E.       Any other remedy this Court deems necessary and proper.

**COUNT III**
**BREACH OF CONTRACT**
**(AS TO RANGER AND RANGER EAST)**

43.       CIES incorporates the preceding allegations as if fully set forth herein and further states

the following:

44.       CIES had a valid and binding contractual agreement with Ranger and/or Ranger East

for CIES to supply materials to the Project.

45.       CIES performed in full pursuant to the agreement.

46.       Ranger and/or Ranger East materially breached the parties' agreement by failing to pay

CIES.

47.       Despite full performance and demand for payment by CIES, Ranger and/or Ranger East

have failed to remit payment for the full amount of the agreement.

48.       The total amount due for the materials CIES provided is $1,161,424.35.

WHEREFORE, Plaintiff C.I. Energia Solar S.A. E.S. Windows demands judgment against

Defendants Ranger Specialized Glass, Inc. and Ranger Glass East Coast, Inc., jointly and severally, in

the following amounts:

A.       Compensatory damages of $1,161,424.35;

B.       Pre-judgment and post-judgment interest at the legal rate;

C.       Costs of this action; and

D.       Any other remedy this Court deems necessary and proper.

COMPLAINT - 8

WHITTAKER & ASSOCIATES, P.C.
1010 Rockville Pike-Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

**COUNT IV**
**UNJUST ENRICHMENT**
**(AS TO RANGER AND RANGER EAST)**

49.     CIES incorporates Paragraphs 1-10 as if fully set forth herein and further states the following:

50.     CIES provided materials to Ranger and/or Ranger East to complete Ranger and/or Ranger East's scope of work on the Project.

51.     Even if no express contract is found to exist as to some or all of the aforesaid materials that CIES supplied to Ranger and/or Ranger East on the Project, said work was furnished at the request of Ranger and/or Ranger East and conferred a benefit on Ranger and/or Ranger East.

52.     Ranger and/or Ranger East's requests implied a promise to compensate CIES for the materials which CIES furnished to Ranger and/or Ranger East.

53.     Ranger and/or Ranger East have, and had at all times pertinent hereto, an appreciation and/or knowledge of the benefit conferred by CIES and accepted or retained the benefit of CIES' materials without paying the reasonable value of said work.

54.     Ranger and/or Ranger East knew that CIES expected to be compensated for said work.

55.     The reasonable value of the materials CIES provided to Ranger and/or Ranger East for which it has not been paid is an amount in excess of $1,161,424.35.

56.     Despite demand by CIES, Ranger and/or Ranger East has failed and refused to pay the $693,972.89 owed to CIES to compensate CIES for the value of the materials CIES provided to Ranger and/or Ranger East.

57.     CIES has been harmed in an amount in excess of $1,161,424.35.

COMPLAINT - 9

WHEREFORE, Plaintiff C.I. Energia Solar S.A. E.S. Windows requests judgment against Defendant Ranger Specialized Glass and Ranger Glass East Coast, Inc., jointly and severally, for the following:

    A.      A principal amount of $1,161,424.35;

    B.      Post-judgment interest at the legal rate;

    C.      Costs of this action; and

    D.      Any other remedy this Court deems necessary and proper.

**COUNT V**
**VIOLATION OF DC CODE ANN., § 27-131, *ET SEQ.***
**(AS TO RANGER AND RANGER EAST)**

58.      CIES incorporates the preceding allegations as if fully stated herein and further states the following:

59.      D.C. Code Ann., § 27-131, *et seq.* (hereinafter "Prompt Payment Act") mandates prompt payment by subcontractors to sub-subcontractors.

60.      Upon information and belief, Ranger and/or Ranger East received payment for CIES' work on the Project.

61.      Pursuant to the Prompt Payment Act, Ranger and/or Ranger East were required to pay CIES within 7 days of receipt of payment for CIES' materials.

62.      Ranger and/or Ranger East did not pay CIES as required by the Prompt Payment Act.

63.      There was no just reason for Ranger and/or Ranger East to withhold payment from CIES.

64.      To date, Ranger and/or Ranger East have not remitted payment to CIES despite receiving payment for CIES' materials.

65.      To the extent that Ranger and/or Ranger East received payment for CIES' materials, Ranger and/or Ranger East are in violation of the Prompt Payment Act.

WHITTAKER & ASSOCIATES, P.C.
1010 Rockville Pike-Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

66. Ranger and/or Ranger East have acted in bad-faith by withholding payment from CIES.

67. Pursuant to D.C. Code Ann. § 27-135, CIES is entitled to interest and costs, including reasonable attorney's fees.

WHEREFORE, the Plaintiff C.I. Energia Solar S.A. E.S. Windows requests judgment against Defendants Ranger Specialized Glass, Inc. and Ranger Glass East Coast, Inc., jointly and severally, for the following:

A. A principal amount in excess of $1,161,424.35;

B. Reasonable attorneys' fees;

C. Pre-judgment and post-judgment interest at the statutory rate of 18% per annum;

D. Costs of this action; and

E. For such other and further relief as the Court may deem just and proper.


Respectfully submitted,


/s/Shawn C. Whittaker
Shawn C. Whittaker, DC Bar #468533
Scott M. Myers, DC Bar #1046812
Whittaker & Associates, P.C.
1010 Rockville Pike, Suite 607
Rockville, MD 20852
Phone:  (301) 838-4502
Fax:  (301) 838-4505
shawn@whittaker-law.com

WHITTAKER & ASSOCIATES, P.C.
1010 Rockville Pike-Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

# PAYMENT BOND

### TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA
Hartford, Connecticut  06183

Bond No.: 106033098

CONTRACTOR:
(Name, legal status and address)
Foulger-Pratt Contracting, LLC
9601 Blackwell Road, Ste. 200
Rockville, MD 20850

SURETY:
(Name, legal status and principal place of business)
Travelers Casualty and Surety Company of America
One Tower Square
Hartford, CT 06183

OWNER:
(Name, legal status and address)
Art Place at Ft Totten, LLC
c/o Calvin Cafritz Enterprises
1828 L Street, NW, Ste. 703
Washington, DC 20036

CONSTRUCTION CONTRACT
Date: April 10, 2014
Amount: $116,598,000.00
Description:
(Name and location)
Art Place at Fort Totten and Public Improvements Plan Relocation of Hamilton Street, Washington, DC

BOND
Date: September 8, 2014
(Not earlier than Construction Contract Date)

Amount: $ 116,598,000.00
Modifications to this Bond:    [ X ]  None         [    ]   See Section 18

CONTRACTOR AS PRINCIPAL
Company:              (Corporate Seal)
Foulger-Pratt Contracting, LLC

Signature:
Name and
Title:      Bryant Foulger, Principal
(Any additional signatures appear on the last page of this Payment Bond.)

SURETY
Company:              (Corporate Seal)
Travelers Casualty and Surety Company of America

Signature:
Name and
Title:       Don K. Kawamoto, Attorney-in-Fact

(FOR INFORMATION ONLY — Name, address and telephone)
AGENT or BROKER:

Willis Group
12505 Park Potomac Avenue
Potomac, MD 20854

OWNER'S REPRESENTATIVE:
(Architect, Engineer or other party:)

§ 1 The Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference, subject to the following terms.

The Company executing this bond vouches that this document conforms to American Institute of Architects edition



PLAINTIFF'S EXHIBIT

§ 2 If the Contractor promptly makes payment of all sums due to Claimants, and defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, then the Surety and the Contractor shall have no obligation under this Bond.

§ 3 If there is no Owner Default under the Construction Contract, the Surety's obligation to the Owner under this Bond shall arise after the Owner has promptly notified the Contractor and the Surety (at the address described in Section 13) of claims, demands, liens or suits against the Owner or the Owner's property by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety.

§ 4 When the Owner has satisfied the conditions in Section 3, the Surety shall promptly and at the Surety's expense defend, indemnify and hold harmless the Owner against a duly tendered claim, demand, lien or suit.

§ 5 The Surety's obligations to a Claimant under this Bond shall arise after the following:

§ 5.1 Claimants, who do not have a direct contract with the Contractor,
.1       have furnished a written notice of non-payment to the Contractor, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were, or equipment was, furnished or supplied or for whom the labor was done or performed, within ninety (90) days after having last performed labor or last furnished materials or equipment included in the Claim; and
.2       have sent a Claim to the Surety (at the address described in Section 13).

§ 5.2 Claimants, who are employed by or have a direct contract with the Contractor, have sent a Claim to the Surety (at the address described in Section 13).

§ 6 If a notice of non-payment required by Section 5.1.1 is given by the Owner to the Contractor, that is sufficient to satisfy a Claimant's obligation to furnish a written notice of non-payment under Section 5.1.1.

§ 7 When a Claimant has satisfied the conditions of Sections 5.1 or 5.2, whichever is applicable, the Surety shall promptly and at the Surety's expense take the following actions:

§ 7.1 Send an answer to the Claimant, with a copy to the Owner, within sixty (60) days after receipt of the Claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed; and

§ 7.2 Pay or arrange for payment of any undisputed amounts.

§ 7.3 The Surety's failure to discharge its obligations under Section 7.1 or Section 7.2 shall not be deemed to constitute a waiver of defenses the Surety or Contractor may have or acquire as to a Claim, except as to undisputed amounts for which the Surety and Claimant have reached agreement. If, however, the Surety fails to discharge its obligations under Section 7.1 or Section 7.2, the Surety shall indemnify the Claimant for the reasonable attorney's fees the Claimant incurs thereafter to recover any sums found to be due and owing to the Claimant.

§ 8 The Surety's total obligation shall not exceed the amount of this Bond, plus the amount of reasonable attorney's fees provided under Section 7.3, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

§ 9 Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any construction performance bond. By the Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work.

§ 10 The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract. The Owner shall not be liable for the payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligation to make payments to, or give notice on behalf of, Claimants or otherwise have any obligations to Claimants under this Bond.

The Company executing this bond vouches that this document conforms to American Institute of Architects Document A312, 2010 edition

2

§ 11 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

§ 12 No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the state in which the project that is the subject of the Construction Contract is located or after the expiration of one year from the date (1) on which the Claimant sent a Claim to the Surety pursuant to Section 5.1.2 or 5.2, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

§ 13 Notice and Claims to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the page on which their signature appears. Actual receipt of notice or Claims, however accomplished, shall be sufficient compliance as of the date received.

§ 14 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. When so furnished, the intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

§ 15 Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor and Owner shall promptly furnish a copy of this Bond or shall permit a copy to be made.

§ 16 Definitions
§ 16.1 Claim. A written statement by the Claimant including at a minimum:
.1      the name of the Claimant;
.2      the name of the person for whom the labor was done, or materials or equipment furnished;
.3      a copy of the agreement or purchase order pursuant to which labor, materials or equipment was furnished for use in the performance of the Construction Contract;
.4      a brief description of the labor, materials or equipment furnished;
.5      the date on which the Claimant last performed labor or last furnished materials or equipment for use in the performance of the Construction Contract;
.6      the total amount earned by the Claimant for labor, materials or equipment furnished as of the date of the Claim;
.7      the total amount of previous payments received by the Claimant; and
.8      the total amount due and unpaid to the Claimant for labor, materials or equipment furnished as of the date of the Claim.

§ 16.2 Claimant. An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Construction Contract. The term Claimant also includes any individual or entity that has rightfully asserted a claim under an applicable mechanic's lien or similar statute against the real property upon which the Project is located. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

§ 16.3 Construction Contract. The agreement between the Owner and Contractor identified on the cover page, including all Contract Documents and all changes made to the agreement and the Contract Documents.

§ 16.4 Owner Default. Failure of the Owner, which has not been remedied or waived, to pay the Contractor as required under the Construction Contract or to perform and complete or comply with the other material terms of the Construction Contract.

§ 16.5 Contract Documents. All the documents that comprise the agreement between the Owner and Contractor.

§ 17 If this Bond is issued for an agreement between a Contractor and subcontractor, the term Contractor in this Bond shall be deemed to be Subcontractor and the term Owner shall be deemed to be Contractor.

§ 18 Modifications to this bond are as follows:

The Company executing this bond vouches that this document conforms to American Institute of Architects Document A312, 2010 edition

3

(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)

CONTRACTOR AS PRINCIPAL                          SURETY
Company:                (Corporate Seal)         Company:              (Corporate Seal)

Signature:                                       Signature:
Name and Title:                                  Name and Title:
Address:                                         Address:

The Company executing this bond vouches that this document conforms to American Institute of Architects Document A312, 2010
edition                                                                                                    4

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

# POWER OF ATTORNEY

**TRAVELERS**

| | |
|---|---|
| Farmington Casualty Company | St. Paul Mercury Insurance Company |
| Fidelity and Guaranty Insurance Company | Travelers Casualty and Surety Company |
| Fidelity and Guaranty Insurance Underwriters, Inc. | Travelers Casualty and Surety Company of America |
| St. Paul Fire and Marine Insurance Company | United States Fidelity and Guaranty Company |
| St. Paul Guardian Insurance Company | |

Attorney-In Fact No. 227207

Certificate No. 005656573

**KNOW ALL MEN BY THESE PRESENTS:** That Farmington Casualty Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company are corporations duly organized under the laws of the State of Connecticut, that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc., is a corporation duly organized under the laws of the State of Wisconsin (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint

Vincent DePaul Boylan Jr., Joseph G. Delaney, John H. Wilson, William B. Hocknell, Karen M. Earp, and Don K. Kawamoto

of the City of _____Potomac_____, State of _____Maryland_____, their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, conditional undertakings and other writings obligatory in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**IN WITNESS WHEREOF,** the Companies have caused this instrument to be signed and their corporate seals to be hereto affixed, this _____30th_____ day of _____September_____, _____2013_____.

| | |
|---|---|
| Farmington Casualty Company | St. Paul Mercury Insurance Company |
| Fidelity and Guaranty Insurance Company | Travelers Casualty and Surety Company |
| Fidelity and Guaranty Insurance Underwriters, Inc. | Travelers Casualty and Surety Company of America |
| St. Paul Fire and Marine Insurance Company | United States Fidelity and Guaranty Company |
| St. Paul Guardian Insurance Company | |

State of Connecticut
City of Hartford ss.

By: _____
Robert L. Raney, Senior Vice President

On this the _____30th_____ day of _____September_____, _____2013_____, before me personally appeared Robert L. Raney, who acknowledged himself to be the Senior Vice President of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

In Witness Whereof, I hereunto set my hand and official seal.
My Commission expires the 30th day of June, 2016.

_____
Marie C. Tetreault, Notary Public

58440-8-12 Printed in U.S.A.

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Boards of Directors of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, which resolutions are now in full force and effect, reading as follows:

**RESOLVED,** that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President, any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the Company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking, and any of said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her; and it is

**FURTHER RESOLVED,** that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary; and it is

**FURTHER RESOLVED,** that any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary and duly attested and sealed with the Company's seal by a Secretary or Assistant Secretary; or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority; and it is

**FURTHER RESOLVED,** that the signature of each of the following officers: President, any Executive Vice President, any Senior Vice President, any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Resident Vice Presidents, Resident Assistant Secretaries or Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding on the Company in the future with respect to any bond or understanding to which it is attached.

I, Kevin E. Hughes, the undersigned, Assistant Secretary, of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Companies, which is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this __8th__ day of __September__ , 20 14 .

Kevin E. Hughes, Assistant Secretary

        

To verify the authenticity of this Power of Attorney, call 1-800-421-3880 or contact us at www.travelersbond.com. Please refer to the Attorney-In-Fact number, the above-named individuals and the details of the bond to which the power is attached.

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

BOND NO. 0189994

EXHIBIT L

## PAYMENT BOND

KNOW ALL MEN BY THESE PRESENTS, THAT _Ranger Specialized Glass, Inc._ as principal ("Principal"), and _Berkley Insurance Company_ _____ (insert the name, address and state of incorporation of Surety) as Surety, hereinafter called Surety, are held and firmly bound unto FOULGER-PRATT CONTRACTING, LLC, 9601 Blackwell Road, Suite 200, Rockville, Maryland 20850 as Obligee, hereinafter called Obligee, in the amount of _Twelve million five hundred fifty thousand_ (($12,550,000.00  *Currency,  for  the  payment  whereof  Principal  and  Surety  bind  themselves,  their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, the Obligee has been awarded a contract (the "Prime Contract") by _Art Place at Ft Totten, LLC c/o Calvin Cafritz Enterprises_ ("Owner") for _Art Place at Fort Totten_ (the "Contract Work")

[WHEREAS, as a condition of the Prime Contract the Owner has required that Obligee provide payment and performance bonds.]

WHEREAS, Principal has entered into a Subcontract Agreement with Obligee dated 11/12/2014 (together with the documents, specifications and plans referenced therein the "Subcontract" which is incorporated herein by reference) to perform _Glazing & Metal Wall Panels_ as described in the Subcontract (the "Subcontract Work").

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such, that if the Principal shall promptly make payments to all persons supplying labor, material, rental equipment, supplies, or services in the performance of the said Contract and any and all modifications of said Contract that may hereafter be made, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

The said Surety agrees that no change, extension of time, alteration, addition, omission, or other modification of the terms of either the said Contract or the said Prime Contract, or both, or in the said work to be performed, or in the specifications, or in the plans, shall in anywise affect its obligation on this Bond, and it does hereby waive notice of any such changes, extensions of time, alterations, additions, omissions, and other modifications.

The said Principal and the said Surety agree that this Bond shall inure to the benefit of all persons supplying labor, material, rental equipment, supplies, or services in the performance of the said Contract, as well as to the Obligee, and that such persons may maintain independent actions upon this Bond, in their own names.

IN WITNESS WHEREOF, the above bounden parties have executed this instrument under their several seals this 26th day of _January_ , 2015, the name and corporate seal of each corporate party being hereto affixed and these presents duly signed by its undersigned representative, pursuant to authority of its governing body.

Witness: _____

Principal: Ranger Specialized Glass, Inc.

By: _____
Signature                [Seal]

_____
Name and title—type or print

Witness: _____
Lori Ellis

Surety:  Berkley Insurance Company

By: _____
Signature—Attorney-In-Fact        [Seal]

Sharon R. Groppell, Attorney-In-Fact
Name and title—type or print

NOTE: An original Power of Attorney bearing same date as Bond must be attached.



Initials

No. BI-304b

POWER OF ATTORNEY
BERKLEY INSURANCE COMPANY
WILMINGTON, DELAWARE

NOTICE: The warning found elsewhere in this Power of Attorney affects the validity thereof. Please review carefully.

KNOW ALL MEN BY THESE PRESENTS, that BERKLEY INSURANCE COMPANY (the "Company"), a corporation duly organized and existing under the laws of the State of Delaware, having its principal office in Greenwich, CT, has made, constituted and appointed, and does by these presents make, constitute and appoint: *Lori Ellis, Edward L. Moore, Roxanne G. Hebert, David R. Groppell, Beverly A. Ireland, Mary M. Rifaat or Sharen R. Groppell of Elsey & Associates, a Marsh & McLennan Agency LLC of Spring, TX* its true and lawful Attorney-in-Fact, to sign its name as surety only as delineated below and to execute, seal, acknowledge and deliver any and all bonds and undertakings, with the exception of Financial Guaranty Insurance, providing that no single obligation shall exceed Fifty Million and 00/100 U.S. Dollars (U.S.$50,000,000.00), to the same extent as if such bonds had been duly executed and acknowledged by the regularly elected officers of the Company at its principal office in their own proper persons.

This Power of Attorney shall be construed and enforced in accordance with, and governed by, the laws of the State of Delaware, without giving effect to the principles of conflicts of laws thereof. This Power of Attorney is granted pursuant to the following resolutions which were duly and validly adopted at a meeting of the Board of Directors of the Company held on January 25, 2010:

RESOLVED, that, with respect to the Surety business written by Berkley Surety Group, the Chairman of the Board, Chief Executive Officer, President or any Vice President of the Company, in conjunction with the Secretary or any Assistant Secretary are hereby authorized to execute powers of attorney authorizing and qualifying the attorney-in-fact named therein to execute bonds, undertakings, recognizances, or other suretyship obligations on behalf of the Company, and to affix the corporate seal of the Company to powers of attorney executed pursuant hereto; and said officers may remove any such attorney-in-fact and revoke any power of attorney previously granted; and further

RESOLVED, that such power of attorney limits the acts of those named therein to the bonds, undertakings, recognizances, or other suretyship obligations specifically named therein, and they have no authority to bind the Company except in the manner and to the extent therein stated; and further

RESOLVED, that such power of attorney revokes all previous powers issued on behalf of the attorney-in-fact named; and further

RESOLVED, that the signature of any authorized officer and the seal of the Company may be affixed by facsimile to any power of attorney or certification thereof authorizing the execution and delivery of any bond, undertaking, recognizance, or other suretyship obligation of the Company; and such signature and seal when so used shall have the same force and effect as though manually affixed. The Company may continue to use for the purposes herein stated the facsimile signature of any person or persons who shall have been such officer or officers of the Company, notwithstanding the fact that they may have ceased to be such at the time when such instruments shall be issued.

IN WITNESS WHEREOF, the Company has caused these presents to be signed and attested by its appropriate officers and its corporate seal hereunto affixed this *10* day of *February*, 2014.

Attest:                                                Berkley Insurance Company

(Seal)      By _____          By _____
               Ira S. Lederman                        Jeffrey M. Hafter
               Senior Vice President & Secretary       Senior Vice President

WARNING: THIS POWER INVALID IF NOT PRINTED ON BLUE "BERKLEY" SECURITY PAPER.

STATE OF CONNECTICUT )
                                         ) ss:
COUNTY OF FAIRFIELD  )

Sworn to before me, a Notary Public in the State of Connecticut, this *10* day of *February*, 2014, by Ira S. Lederman and Jeffrey M. Hafter who are sworn to me to be the Senior Vice President and Secretary, and the Senior Vice President, respectively, of Berkley Insurance Company.

_____
Notary Public, State of Connecticut

KATHLEEN COREY
NOTARY PUBLIC
CONNECTICUT
MY COMMISSION EXPIRES OCTOBER 31, 2017

CERTIFICATE

I, the undersigned, Assistant Secretary of BERKLEY INSURANCE COMPANY, DO HEREBY CERTIFY that the foregoing is a true, correct and complete copy of the original Power of Attorney; that said Power of Attorney has not been revoked or rescinded and that the authority of the Attorney-in-Fact set forth therein, who executed the bond or undertaking to which this Power of Attorney is attached, is in full force and effect as of this date.

Given under my hand and seal of the Company, this 26th day of January, 2015.

(Seal)                                    _____
                                               John P. Beers

WARNING – Any unauthorized reproduction or alteration of this document is prohibited. This power of attorney is void unless seals are readable and the certification seal at the bottom is embossed. The background imprint, warning and confirmation (on reverse) must be in blue ink.

IMPORTANT NOTICE

To obtain information or make a complaint:

You may call Berkley Surety Group's toll-free telephone number for information or to make a complaint at:

1-866-245-1973

You may also write to Berkley Surety Group at:

Berkley Surety Group, Inc.
412 Mt. Kemble Avenue
Suite 310N
Morristown, NJ 07960
Attention: Surety Claims Department

OR

E-mail: BSGClaim@wrbcsurety.com

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

1-800-252-3439

You may write the Texas Department of Insurance:

P.O. Box 149104
Austin, TX 78714-9104
Fax: (512) 475-1771
Web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

PREMIUM OR CLAIM DISPUTES:
Should you have a dispute concerning your premium or about a claim you should contact the company. If the dispute is not resolved, you may contact the Texas Department of Insurance.

ATTACH THIS NOTICE TO YOUR POLICY:
This notice is for information only and does not become a part or condition of the attached document.

AVISO IMPORTANTE

Para obtener información o para someter una queja:

Usted puede llamar al numero de telefono gratis de Berkley Surety Group's para informacion o para someter una queja al:

1-866-245-1973

Usted tambien puede escribir a Berkley Surety Group:

Berkley Surety Group, Inc.
412 Mt. Kemble Avenue
Suite 310N
Morristown, NJ 07960
Attention: Surety Claims Department

OR

E-mail: BSGClaim@wrbcsurety.com

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

1-800-252-3439

Puede escribir al Departamento de Seguros de Texas:

P.O. Box 149104
Austin, TX 78714-9104
Fax: (512) 475-1771
Web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

DISPUTAS SOBRE PRIMAS O RECLAMOS:
Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el la compania primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

UNA ESTE AVISO A SU POLIZA: Este aviso es sólo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

# ENERGIA SOLAR ESWINDOWS

# ART PLACE AT FORT TOTTEN

ES WINDOWS LLC
DMR-015-009

DATE: OCTOBER 28, 2015

TO: RangerGlass.
19031 Aldine westfield.
Houston, TX 77073

| SALES CONTACT | PROJECT NAME | PAYMENT TERMS |
|---|---|---|
| Carlos Amin | Art Place at Fort Totten Washington, DC. | TBD |

This Quote was performed with reference on drawings, sheets A0-00 to A5.29a issued for bid on January 17th, 2014 and EC520 Art Place at Fort Totten -Progress Metrics (Sent to ESW 8.13.15).

This quote is for ESWindows LLC. to supply the following systems:

1. **SL Curtain Wall/ Storefront System:** ES-7525/6025 SL thermally improved Curtain Wall system. Typical profile of the system is 7.5"/6.0" deep by 2.5" wide. The system will be shipped as SL extrusions & Crated Glass to Washington, DC.

2. **SL Storefront System:** ES-4520 4-Way Captured SL thermally Broken Storefront system. Typical profile of the system is 4.5" deep by 2" wide. The system will be shipped as SL extrusions & Crated Glass to Washington, DC.

3. **Terrace Doors:** ES-45T Thermally Broken Out-swing acting terrace door. The system will be shipped as pre-glazed units and it will be delivered to Washington, DC. Standard Hardware included (Butt hinges, Three-Point lock, Lever handle back to back, thumb-turn, keyed cylinder).

4. **Sliding Glass Door System:** ES-SD450 Thermally Broken Sliding door system. The system will be shipped as pre-glazed units and it will be delivered to Washington, DC. Standard hardware included (Multi-point lock mechanism, Involute handle Kit, Rollers, thumb turn and keyed cylinder, piles, gaskets, thermal break bars).



PLAINTIFF'S EXHIBIT
3

5. <u>Fixed/Operable Window System:</u> ES-P350/ 450 thermally broken Fixed/ Casement/ Project-Out (Awning) window system. Typical profile of the system is 3.5"/4.5" deep. The system will be shipped as pre-glazed units and it will be delivered to Washington, DC. Standard Hardware included (Multipoint Lock, Insect Screens, Insulbars, Gaskets, frames assembly fasteners).

6. <u>Medium Style Entrance Door System:</u> ES-35 Out-swing acting entrance door. Typical profile of the system is 5" deep. The system will be shipped as SL extrusions & Crated Glass to Washington, DC. Hardware is not included.

## ES-7525 CURTAIN WALL/ STOREFRONT SYSTEM

**Specifically included:**

- Curtain Wall/ Storefront SL extrusions.
- Finish on Aluminum to be
  - AC-1: Duranar Sunstorm Silversmith UC121430F
  - AC-2: Duranar Charcoal Gray UC116880
  - AC-4: Duranar Sunstorm Oxford Blue UC116954F
  *Project price may change depending on final UC aluminum reference color choice.*

- Gaskets, setting blocks & assembly fasteners.
- Fabrication of units @ shop.
- Glass configuration as follows:

*1/4" SB60 Clear FT+ 1/2" Argon Filled MF+ 1/4" Clear HS*
*1/4" SB60 Clear FT+ 1/2" Argon Filled MF+ 1/4" Clear HS+ Custom Frit*

- <u>**6,140**</u> total square feet coverage of ES-7525 Curtain Wall system@ Bldg A1.
- <u>**4,492**</u> total square feet coverage of ES-7525 Curtain Wall system@ Bldg A2.
- <u>**509**</u> total square feet coverage of ES-7525 Curtain Wall system@ Bldg A3.

## ES-6025 STOREFRONT SYSTEM

**Specifically included:**

- Storefront SL extrusions.
- Finish on Aluminum to be
  - AC-1: Duranar Sunstorm Silversmith UC121430F
  - AC-2: Duranar Charcoal Gray UC116880
  - AC-4: Duranar Sunstorm Oxford Blue UC116954F
  - AC-5: Duranar Sunstorm Pewter UC70191F
  - AC-13: Duranar Gray UC92329
  *Project price may change depending on final UC aluminum reference color choice.*

2

- Gaskets, setting blocks & assembly fasteners.
- Fabrication of units @ shop.
- Glass configuration as follows:

*1/4" SB60 Clear FT+ 1/2"Argon Filled MF+ 1/4" Clear HS*
*1/4" SB60 Optigray FT+ 1/2"AS MF+ 1/4" Clear HS*
*1/4" SB60 Clear FT+ 1/2"Argon Filled MF+ 1/4" Clear HS+ PPG 1003-7 BlackHeart Frit*
*1/4" SB60 Clear FT+ 1/2"Argon Filled MF+ 1/4" Clear HS+ Custom Frit*

- **7,252** total square feet coverage of ES-6025 system@ Bldg A1.
- **8,375** total square feet coverage of ES-6025 system@ Bldg A2.
- **2,031** total square feet coverage of ES-6025 system@ Bldg A3.
- **692** total square feet coverage of ES-6025 system@ Lovers framing: X4, X5, X13, X14, X15, X16, X17, X18, X19, X20, X21, X22, X23, X24, X25, X26, X27, X28, X29, X30, X31 and X42.

## ES-4520 STOREFRONT SYSTEM

**Specifically included:**

- Storefront SL extrusions.
- Finish on Aluminum to be
  - AC-1: Duranar Sunstorm Silversmith UC121430F
  - *Project price may change depending on final UC aluminum reference color choice.*

- Gaskets, setting blocks & assembly fasteners.
- Fabrication of units @ shop.
- Glass configuration as follows:

*1/4" Clear FT*

- **401** total square feet coverage of ES-6025 system@ Bldg A1.
- **453** total square feet coverage of ES-6025 system@ Bldg A2.
- **771** total square feet coverage of ES-6025 system@ Bldg A3.

## ES-35 MEDIUM STYLE ENTRANCE DOOR SYSTEM

**Specifically included:**

- Storefront SL extrusions.
- Finish on Aluminum to be
  - AC-1: Duranar Sunstorm Silversmith UC121430F
  - AC-2: Duranar Charcoal Gray UC116880
  - AC-4: Duranar Sunstorm Oxford Blue UC116954F
  - AC-5: Duranar Sunstorm Pewter UC70191F
  - AC-13: Duranar Gray UC92329
  - *Project price may change depending on final UC aluminum reference color choice.*

3

- Glass configuration as follows, all 1" thk IGU, unless otherwise noted:

*1/4" SB60 Clear FT+ 1/2"Argon Filled MF+ 1/4" Clear HS*
*1/4" Clear FT*
*1/4" SB60 Optigray FT+ 1/2"AS MF+ 1/4" Clear HS*
*1/4" SB60 Clear FT+ 1/2"Argon Filled MF+ 1/4" Clear HS+ PPG 1003-7 BlackHeart Frit*

- **1,087** total square feet coverage of ES-35 system@ Bldg A1.
- **1,226** total square feet coverage of ES-35 system@ Bldg A2.
- **395** total square feet coverage of ES-6025 system@ Bldg A3.
- SL parts for doors: 49B (1-120a), 46B (1S,13), 49C (1-130), 17 (1-101), 10A (1-100B), 39(1-100a), 49A (1-120), 23A (1-240a), 18 (1-250), 52A (1-240), 55A (1-240d), 37 (1-362a), 36(1-374B), 58A(1-374c), 59A-P(1-374c), W-A1C (1-370a), W-A3 (1-377a), W-A4a (1-378c), W-A4c (1-378a), W-A5a (1-383), W-A5b(1-384), 1-362a, 1-376a, 1-377b, 1-368a, 1-378b, 1-385, 86(2-110a), 82B(2-111C), 83B-1, 83BOH, 82A(2-111B), 83A-1, 83A, 73(2-111B), 71(2-S2,4), 70(2-210a), 68(2-210b), 64B(2-220a), 64A(2-220B), 88(2-366a), 2-380, 90(2-370), 94(2-362a), 2-381, W-A6a, W-A6c(2-386C), W-A6e-P (2-386b), 130(2-366), 2-371, 2-300, 2-376a, 2-383a, 2-762b, 99 (2-870C), 99(2-870B), 2-870a, 2-871, 123A(3-220a), 121B (3-320b), 121A (3-321b), 117A(3-321a), W-A6I(3-352b), 3-352C, W-A6G (3-T52d-4), W-A6G (3-T52d-4), W-A6G (3-T52d-4), W-A6G(3-T52d-4), 1-375c, 1-362b, 2-366, 2-383, 2-383b, 2-388a, 2-388b.

## ES-45T TERRACE DOOR

**Specifically included:**

- Frame/Leaf aluminum material.
- Finish on Aluminum to be
  - AC-1: Duranar Sunstorm Silversmith UC121430F
  - AC-4: Duranar Sunstorm Oxford Blue UC116954F
  - AC-5: Duranar Sunstorm Pewter UC70191F
  *Project price may change depending on final UC aluminum reference color choice.*

- Labor for doors assembly @ ESW shop.
- Frame joinery silicone sealants.
- Glass configuration as follows, all 1" thk IGU, unless otherwise noted:

*Gl1: 1/4" SB60 Optigray Ft+ 1/2"as Mf+ 1/4"clear Hs*
*Gl6: 1/4" SB60 Optigray Ft+ 1/2"as Mf+ 1/4"clear Hs+ 0.060pvb+ 1/4" Clear Hs*

- **2,695** total square feet coverage of ES-35 system@ Bldg A1.
- **760** total square feet coverage of ES-35 system@ Bldg A2.
- Gaskets, setting blocks, frame assembly fasteners.

4

## ES-SD450 SLIDING GLASS DOOR SYSTEM

**Specifically included:**

- Door frame/leaf aluminum material.
- Finish on Aluminum to be
  - AC-1: Duranar Sunstorm Silversmith UC121430F
  - AC-12: Duranar XL Sharp Cheddar UC116959XL
  - *Project price may change depending on final UC aluminum reference color choice.*
- Labor for doors assembly @ ESW shop.
- Frame joinery silicone sealants.
- Glass configuration as follows, all 1" thk IGU, unless otherwise noted:

  *Gl1: 1/4" SB60 Optigray Ft+ 1/2"as Mf+ 1/4"clear Hs*

- **1,235** total square feet coverage of ES-35 system@ Bldg A2.
- **200** total square feet coverage of ES-35 system@ Bldg A3.
- Gaskets, setting blocks, frame assembly fasteners.

## ES-P350/450 FIXED/OPERABLE WINDOW SYSTEM

**Specifically included:**

- Fixed/Project-Out window aluminum framing material.
- Finish on Aluminum to be
  - AC-1: Duranar Sunstorm Silversmith UC121430F
  - AC-2: Duranar Charcoal Gray UC116880
  - AC-4: Duranar Sunstorm Oxford Blue UC116954F
  - AC-5: Duranar Sunstorm Pewter UC70191F
  - AC-10: Duranar Eclipse Gray UC106669
  - AC-11: Duranar Fashion Gray UC51825
  - AC-12: Duranar XL Sharp Cheddar UC116959XL
  - AC-13: Duranar Gray UC92329
  - *Project price may change depending on final UC aluminum reference color choice.*
- Labor for windows assembly @ ESW shop.
- Frame joinery silicone sealants.
- Glass configuration as follows:

  *Gl1: 1/4" Sb60 Optigray Ft+ 1/2"as Mf+ 1/4"clear Hs*
  *Gl1a: 1/4" Sb60 Clear Ft+ 1/2"argon Filled Mf+ 1/4"clear Hs*
  *Gl4a: 1/4" Sb60 Optigray Ft+ 1/2"as Mf+ 1/4"clear Hs+ Ppg 1237-3 Ariel Frit*
  *Gl6: 1/4" Sb60 Optigray Ft+ 1/2"as Mf+ 1/4"clear Hs+ 0.060pvb+ 1/4" Clear Hs*

- **42,139** total square feet coverage of ES-P350/450 system@ Bldg A1.
- **25,936** total square feet coverage of ES-P350/450 system@ Bldg A2.
- **12,489** total square feet coverage of ES-P350/450 system@ Bldg A3.

- Gaskets, setting blocks, frame assembly fasteners.
- Insect screens for operable vents.

**Also Included (KD Extrusions):**

- Extruded aluminum material.
- Finish on Aluminum to be
    o AC-1: Duranar Sunstorm Silversmith UC121430F
    o AC-2: Duranar Charcoal Gray UC116880
    o AC-4: Duranar Sunstorm Oxford Blue UC116954F
    o AC-5: Duranar Sunstorm Pewter UC70191F
    o AC-10: Duranar Eclipse Gray UC106669
    o AC-11: Duranar Fashion Gray UC51825
    o AC-12: Duranar XL Sharp Cheddar UC116959XL
    o AC-13: Duranar Gray UC92329
    *Project price may change depending on final UC aluminum reference color choice.*

- **(26)** Total Ln-ft of extruded aluminum (ES-6025-402) Ref. detail 12/A4.61.
- **(65)** Total Ln-ft of extruded aluminum (ES-6025-403) Ref. detail 12/A4.67.
- **(35)** Total Ln-ft of extruded aluminum (ES-6025-405) Ref. detail 3/A4.30 - 5/A3.40 - 2/A4.33 - 5A4.31.
- **(85)** Total Ln-ft of extruded aluminum (ES-6025-406) Ref. detail 1/A4.15.
- **(184)** Total Ln-ft of extruded aluminum (ES-6025-407) Ref. detail 13/A4.44B - 2/A4.51 - 13/A4.56.
- **(310)** Total Ln-ft of extruded aluminum (ES-6025-408) Ref. detail 12/A4.61 - 12/A4.67.
- **(698)** Total Ln-ft of extruded aluminum (ES-6025-410) Ref. detail 15/A4.50 - 5A4.51 - 2/A4-44B - 4/A4-44B - 13/A4-44B.
- **(698)** Total Ln-ft of extruded aluminum (ES-6025-411) Ref. detail 15/A4.50 - 5A4.51 - 2/A4-44B - 4/A4-44B - 13/A4-44B.
- **(2,772)** Total Ln-ft of extruded aluminum (ES-P350-402) Ref. detail 1/A4.11 - 5/A4.64 - 5/A4.70.
- **(26)** Total Ln-ft of extruded aluminum (ES-P350-403) Ref. detail 12/A4.61.
- **(6,292)** Total Ln-ft of extruded aluminum (ES-P350-404) Ref. detail 5/A4.71 - 1/A4.62 - 1/A4.71 - 3/A4.71 - 1/A4.70 - 7/A4.71 - 15/A4.63.
- **(35)** Total Ln-ft of extruded aluminum (ES- P350-405) Ref. detail 3/A4.64.
- **(467)** Total Ln-ft of extruded aluminum (ES- P350-406) Ref. detail 3/A4.75 - 9/A4.70 - 15/A4.71 - 7/A4.61.
- **(1,664)** Total Ln-ft of extruded aluminum (ES- P350-407) Ref. detail 15/A4-70 - 14/A4.70 - 6/A4.70 -7/A4.70 - 8/A4.70 - 3/A4.75.
- **(2,986)** Total Ln-ft of extruded aluminum (ES-P350-409) Ref. detail 14/A4.70 -7/A4.70 - 6/A4.70 - 5/A4.70.
- **(463)** Total Ln-ft of extruded aluminum (ES- P350-410) Ref. detail 15/A4.63 - 1/A4.62.

**Not included in this Quote:**

- Heat Soak for tempered glass lites.
- Steel tubing related to building structure.
- Metal Screens.
- Metal panels.
- Aluminum composite metal panel, unless otherwise stated in quote.
- Break Metals.
- MP-6, unless otherwise stated in quote.
- MP-9, unless otherwise stated in quote.
- Railings.
- Touch-up paint and attic stock.
- Structural Silicone for stick systems.
- Canopies and skylights (W-7).
- Insulation.
- Backpans.
- Break metal closures others than mentioned above.
- Louvers.
- Sunshades.
- Stainless steel sill flashings and counter flashing.
- Slab edge covers.
- Steel embeds.
- Microline trim extrusion. Ref. detail 06/A4.71
- Continuous angles to support lenses. Ref. detail 10/A5.06
- Window Treatments & Suspended Ceilings.
- Wall end caps.
- Soffits.
- Blank Off Panels.
- Structurally glazed operable walls.
- Nanawalls.
- Parapet assemblies, waterproofing at parapets and copings.
- Windows Washing Equipment.
- Aluminum framed folding system.
- Smoke seal, fire stopping and fire safing.
- Cleaning of glass and aluminum.
- Any Interior glazing, unless otherwise stated in quote.
- Installation of CW/WW/SF frames units at jobsite.
- Interior Caulking.
- Alum. Interlocking ramp.
- Wire or Fire rated glass.
- Hollow metal or fire rated doors.
- Aluminum or stainless steel sill flashings and counter flashing.
- Window Treatments & Suspended Ceilings.

7

- Furnish of installation hardware (Screws, Shims & Perimeter Caulking).
- Furring and Metal Studs.
- Automatic Sliding Doors.
- All-glass doors.
- Field quality control testing.
- Break metals for metal studs cladding.
- Revolving doors.
- Automatic entrances.
- Card readers, power suppliers, electronic devices for entrances.
- Hardware for entrance doors.
- Mock Ups.
- Laboratory testing for Mock Ups.
- Sales Taxes.

**Qualifications:**

- Structural evaluation for systems listed above was made based on file "Art Place Corner window Count". Special internal reinforcing may be required if conditions exceed the maximum checked.
- Engineering included with calculations package and wet stamp on front page only.
- The systems in this quote are not tested for the effects of earthquake motions according to SEI/ASCE 7.
- General contractor to coordinate, prior CW/WW/SF design, delivery of Updated CAD drawings and hardcopy plans.
- All WW/SF conditions were assumed w/ proper structural fastened surface at head & sill points.
- Delivery of material included in this quote was considered by floor on 40' steel containers. Container quantity has to be recalculated when the shipping sequence is issued. If final container quantity exceeds the estimated one on this offer, then additional charges will apply for this item.
- G.C to provide proper structural member @ 10'-10 ¾" height, to support opening marks 47A, 48A, 49A.
- G.C to provide proper structural member @ 9'-10 ¾" height, to support opening marks 47B, 48B, 49B.
- G.C to provide proper structural member @ 8'-10 ¾" height, to support opening marks 47C, 48C, 49C.
- G.C to provide proper structural member @ level 3, to support opening marks 65A, 65B and 67.
- G.C to provide proper structural member @ 12'-8" height, to support opening marks 73, 74 and 75.
- G.C to provide proper structural member @ 11'-7 ¼" height, to support opening marks 85, 86 and 87.
- Any change on Drawings or/and production sequence may result on a different glass optimization which may affect project price & lead times.

- Glass lites furnished in Quote are Heat Strengthened or Tempered in order to avoid suddenly breakage due to thermal stress.
- Ceramic Frit will be placed on glass surface No. 4.
- Hardware finish to be selected from the following standard colors: silver, black and white.
- Bluemax @ exterior surface of windows was included for all unitized systems.
- Trims, flashing, caps, fins, receptors and any additional extrusion to be shipped loose.
- Crating material included in quote for all unitized systems.
- Shop Drawings & Engineering are included in quote.
- Signed & Sealed Calculations are included in quote.
- Refer to our Terms of Sale which apply to all orders.

## AREA SCOPE:

Pricing is based on areas listed on this quote. Any other materials will be added to the final price.

| LEVEL | | | TOTAL SQFT |
|---|---|---|---|
| BLDG A1 | | | 58,627 |
| BLDG A2 | | | 41,182 |
| BLDG A3 | | | 16,069 |
| LOUVERS FRAMING | | | 692 |
| TOTAL PROJECT AREA | | | 116,570 |

## PROJECT PRICING:

| DESCRIPTION | PRICE |
|---|---|
| TOTAL PROJECT PRICE | $ 4,445,495 |

Sales Taxes are not included.
Quote is valid for 30 days.

Submitted by: _____
                        Carlos Amin

For:          ESWindows LLC
Date:         October 28, 2015

9

## PURCHASE ORDER CONFIRMATION

Your Purchase Order will be sent to production only with your signature accepting the technical specification measurements and quantities specified.

Signature: _____

Date: _____
The production period starts after your approve date.

This purchase order id bounded by our terms of sale and this terms Supersede any others previous agreement.

### TERMS OF SALE

1. ES WINDOWS agrees to furnish only the goods described in the order confirmation / acknowledgment / pro forma or quotation, which may vary from project plans, specifications, and/or purchase orders.
2. The contract price is based solely upon the particular drawings, specifications, makeups, or other contract documents, which are specifically identified in the quotation. Items omitted are excluded.
3. The contract price is conditioned upon payment within 30 days of receipt of materials with no retainage allowed.
4. The time for delivery shown on the face of the order confirmation / acknowledgment / pro forma, if any, is an estimate only. ES WINDOWS will not be liable for any loss or damage to Buyer or others due to delay or not delivering in accordance with the estimated date regardless of the cause. ES WINDOWS will select the method of delivery.
5. Completed orders unable to be accepted within 30 days of the original ship date are subject to storage charges. Fees will be assessed at $15 per unit per month. The storage charges will be payable net 30 days. ES WINDOWS will not be liable for damage to materials stored longer than 60 days nor will ES WINDOWS be liable for damage or failure of any materials stored in any manner contrary to industry standards and/or specific storage requirements identified by ES WINDOWS in any product materials.
6. ES WINDOWS reserves the right to charge any and all unknown surcharges and miscellaneous costs assessed by our vendors.
7. ES WINDOWS may, in its sole discretion, agree to grant credit terms to Buyer. ES WINDOWS will not be liable to Buyer for any refusal to grant credit. Any credit terms are subject to ES WINDOWS continuing approval of Buyers credit. If in ES WINDOWS sole discretion Buyers credit or financial standing becomes unsatisfactory ES WINDOWS may withdraw or modify the credit terms. Buyer shall be responsible for ES WINDOWS costs of collection including reasonable attorney's fees in the event of nonpayment.

8. Unless otherwise agreed in writing by ES WINDOWS, all goods, including those produced to meet an exact specification, shall be subject to tolerances and variations consistent with the usage of trade, regular factory practices, and practical testing and inspection methods.

9. ES WINDOWS has no system design or application responsibility to Buyer or any third party.

10. ES WINDOWS EXPRESSLY DISCLAIMS ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AND ANY OTHER OBLIGATION OR LIABILITY NOT EXPRESSLY SET FORTH IN ITS STANDARD TERMS OF WARRANTY. ES WINDOWS SHALL NOT BE LIABLE UNDER ANY CIRCUMSTANCES FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES.

11. All claims for breakage are the responsibility of the consignee, and claims must be filed by the consignee.

12. ES WINDOWS provides a limited warranty. Its terms are set out in ES WINDOWS separate warranty certificate available on request. ES WINDOWS will not accept any charge or expense, including labor for modification, removing, inspecting, or installing the goods. ES WINDOWS may void the limited warranty upon products for which ES WINDOWS has not been paid. ES WINDOWS limited warranty as provided to Buyer may only be modified upon written approval of ES WINDOWS President or Vice President(s). Any verbal representations intended to modify any existing ES WINDOWS' warranty shall be invalid and unenforceable against ES WINDOWS. Extended warranties may be available at additional cost and are subject to management and technical approval of glazing details.

13. No goods may be returned to ES WINDOWS for credit without prior written consent. After Buyers order has been accepted, the order may not be modified, canceled or changed without ES WINDOWS consent. Buyer shall be responsible to ES WINDOWS for reasonable cancellation or order change charges.

14. ES WINDOWS shall not be obligated to make any changes or additions to the goods described in the order confirmation / acknowledgment / proforma or quotation unless ES WINDOWS agrees in writing and an equitable adjustment are made if necessary to the price and delivery terms.

15. Buyer shall inspect the goods upon receipt and promptly notify ES WINDOWS of any claim that the goods are nonconforming. ES WINDOWS shall be allowed reasonable opportunity to inspect and cure any claim of alleged non-conformity. Buyer may arrange to inspect at the place of manufacture provided inspection does not interfere with ES WINDOWS operations and the consequent approval or rejection shall be made before shipment of the goods.

16. Buyer acknowledges that the quoted prices do not include freight, manufacturer's gross receipts taxes, sales or use taxes, or any other state, local, and federal taxes and/or assessments that may be payable on the transaction unless otherwise stated in writing by ES WINDOWS. All additional delivery costs arising from local labor agreements shall be borne by the buyer.

17. Buyer acknowledges they are liable for State and local sales/use tax for the goods they are purchasing. Therefore, this order will be taxed in accordance with State and local tax laws to where the product is being shipped. In the event that this order is a nontaxable project, ES WINDOWS must have a valid and properly executed sales/use tax exemption certificate on file prior to the invoicing or you will be billed sales/use tax.

Once you are invoiced by ES WINDOWS it is your responsibility to make payment in full to ES WINDOWS.

18. All Orders are subject to and Buyer is bound by ES WINDOWS Terms of Sale without change, unless otherwise set forth in writing and accepted in writing by ES WINDOWS. To the extent any other terms and/or conditions from any other source, including Buyer, are deemed to conflict with ES WINDOWS Terms of Sale, ES WINDOWS Terms of Sale will govern.

19. Under no circumstances shall ES WINDOWS be liable to or agree to indemnify Buyer or any third party for any loss, costs, damage or expense (including attorney's fees) resulting from Buyer's or any third party's actions or conduct. Buyer shall indemnify and hold ES WINDOWS and its employees, agents, assigns and heirs harmless from and against any loss, costs, damage, or expense (including attorney's fees) resulting from any charge or claim of personal injury or property damage arising out of Buyer's performance under this order or Buyer's negligence or willful misconduct.



LONG FORM
VERSION 1.0

# PURCHASE ORDER

| Ranger Job Number: | EC520 | Purchase Order Number: | EC520-001 | Budget Code(s): | |
|---|---|---|---|---|---|

This Purchase Order ("Agreement") is made as of _____, ("Effective Date"), between Ranger Glass East Coast, a Virginia corporation ("Buyer"), and ES Windows (Seller) in connection with the Prime Contract for the Project, dated with the Owner.

**BUYER**

> Ranger Glass East Coast
> 43760 Trade Center Place, Suite 130
> Dulles, VA 20166

**SELLER**

> ES Windows
> 10653 NE Quaybridge CT
> Miami, FL 33138
>
> Phone:  (305) 904-8808 / 78
> Fax: (305) 207-9518

**OWNER**

> The Morris and Gwendolyn Cafritz Foundation
> 1825 K St NW, #1400
> Washington, D.C. 20006

**PROJECT**

> EC520 – Art Place at Fort Totten
> 5180 South Dakota Avenue, NE
> Washington D.C. 20011

**GENERAL CONTRACTOR**

> Foulger-Pratt
> 9601 Blackwell Road, Suite 200
> Rockville, MD 20850

**ARCHITECT**

> Shalom Baranes Associates, PC
> 1010 Wisconsin Ave NW, #900
> Washington, D.C. 20007



PLAINTIFF'S EXHIBIT
4

> THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES; CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS USE OR MODIFICATION.  SOME CONSTRUCTION PRIME CONTRACTS MAY REQUIRE THE USE OF SPECIALIZED PROVISIONS NOT INCLUDED IN THIS FORM.



LONG FORM
VERSION 1.0

# PURCHASE ORDER

1.  **MATERIAL TO BE PROVIDED:** Seller shall furnish the goods and material described below at the price or prices set forth opposite each item within the times stated below in accordance with the terms and provisions of the Prime Contract.

| Item | Description & Estimated Quantity | Delivery Date |
|---|---|---|
| 001 | S/L Curtain Wall/ Storefront System: ES-7525/ ES-6025 | SEE ATTACHMENT 2 |
| 002 | SL Storefront System: ES 4520 | SEE ATTACHMENT 2 |
| 003 | Terrace Doors: ES-45T Thermally Broken Outswing | SEE ATTACHMENT 2 |
| 004 | Sliding Glass Door System: ES-SD450 Thermally Broken | SEE ATTACHMENT 2 |
| 005 | Fixed/Operable Window System: ES-P350/ ES-P450 Thermally Broken | SEE ATTACHMENT 2 |
| 006 | Medium Style Entrance Door System (Stock Lengths only) | SEE ATTACHMENT 2 |
| 007 | Glass: All exterior and interior glass | SEE ATTACHMENT 2 |
| 008 | Louver Framing: ES-6025 | SEE ATTACHMENT 2 |
| 009 | Misc. KD Extrusions: Custom Dies as needed for extruded trim MP-9 | SEE ATTACHMENT 2 |

| Total: | $4,430,291.00 | |
|---|---|---|

\* Approximate Amount of Material Contract (Based on Estimated Quantity)

Ship to: 5180 South Dakota Avenue, NE      Via: Container      Mark: As per floor and building

Deliver F.O.B. Destination, Freight Prepaid and Allowed, to: Job Site, 5180 South Dakota Ave, NE Washington, D.C.
Mail and Email Invoices:      Ranger Glass
                             19031 Westfield
                             Houston, TX 77073
                             chrisr@rangerglass.com

Terms: Payment within 10 days from payment from Owner and/or General Contractor.

2.  **ENTIRE AGREEMENT:** This Purchase Order is the entire agreement between Ranger Glass East Coast and Seller with respect to the goods and materials and the Project, and supersedes all proposals, negotiations, stipulations, understandings, agreements, representations and warranties, if any, between Buyer and Seller with respect to the goods and materials and the Project which precede or accompany the execution of this Agreement. This Purchase Order consists of this Agreement, the Attachments listed in this Section 2 and the applicable terms, conditions, plans and specifications of the Prime Contract. Seller's acceptance is limited to the terms and conditions contained in this Purchase Order. Commencing performance or making deliveries or any acknowledgement of this Agreement by Seller shall constitute an acceptance of the terms of this Agreement by Seller. Buyer is to be bound only by the terms and conditions of this Purchase Order. Purchase Order Attachments are:

a)  Attachment 1. ES Windows Scope of Work Dated 10/15/2015

b)  Attachment 2. Progress Metrics dated 10/12/2015

*RANGER*

# PURCHASE ORDER

3.   **CHANGES AND RIGHT TO TERMINATE:** Changes will be binding on Buyer only if in writing and signed by the Buyer.

   a)   Buyer, for its convenience, may by written change order make any change, including, without limitation, additions or deductions in quantities ordered, changes in the specifications or drawings, changes in the time of delivery, or termination. Buyer may terminate or suspend, at its convenience, all or any portion of this order not shipped as of the date of termination or suspension of Seller's right to proceed with this Purchase Order. In the event of any change or termination, there shall be an equitable price adjustment by Buyer. If Seller maintains that Buyer's adjustment is not equitable, the price change shall be negotiated. In the event the parties cannot agree, the final determination shall be made in accordance with the dispute resolution provision of this Agreement. However, if unit prices have been designated as to materials maintained in the normal course of Seller's business as standard stock, such unit prices shall control all price adjustments for quantity changes. No change or termination shall relieve Buyer or Seller of any of their obligations as to any material shipped prior to Seller's receipt of the change, termination or suspension order. Any claim for adjustment by Seller hereunder must be asserted in writing within ten (10) days from Notice of the change or termination.

   b)   If the Owner shall order the Buyer to change, adjust, substitute, add to, delete from, suspend, or terminate the work included in this Purchase Order, Seller shall comply with Owner's order and the price or time of performance hereunder shall only be adjusted as allowed by Owner. If requested by Owner, Seller agrees to be bound to, and by, the dispute resolution procedure of the Prime Contract.

   c)      In the event of a termination for default, Buyer may, in addition to all other rights and remedies, purchase substitute items or services elsewhere and hold Seller liable for any and all excess costs incurred, including attorneys' fees and experts' and consultants' fees actually incurred.

4.   **PAYMENT:** The price herein specified shall, unless otherwise expressly stated within the terms of this Agreement, include all taxes and duties of any kind levied by federal, state, municipal, or other governmental authorities, which either party is required to pay with respect to the production, sale, use or shipment of the materials covered by this agreement, and all charges for packing, loading, insurance, shipping and unloading. Transportation costs are designated as part of the cost of the Seller and are only to be compensated for actual costs. Any and all damage to the goods and materials, until acceptance by Buyer at destination, shall be for the account of the Seller.

   Seller's invoice shall set forth the items delivered to the project site, the date of delivery, and the unit cost and total costs of the items invoiced. Seller's right to payment is subject to the same payment provisions enforced upon Buyer by the terms of the Prime Contract. Buyer agrees to pay the seller for goods and materials actually delivered to the named destination under this Agreement, from funds received by Buyer, from Owner, for work of Seller as referenced in Buyer's Payment Applications, except payments withheld due to culpable acts or omissions of **Seller.**

5.   **RISK OF LOSS:** Notwithstanding the terms of shipment, the risk of loss shall pass to Buyer only after delivery and acceptance by Buyer at the named destination.

6.   **DELIVERY:** Time is of the essence of this Agreement. If no delivery date is specified on the face of this order, all deliveries of materials shall conform to the date or dates specified in writing from time to time by Buyer's representative. Should delivery for any reason fail to be timely, Seller shall be liable for all damages suffered by Buyer as a result of such failure, including, without limitation, any liquidated or other damages under Buyer's Prime Contract. In no event shall Seller be entitled to an extension beyond that allowed to Buyer under the terms of the Prime Contract.

7.   **DEFAULTS:** If Seller fails to perform any of its obligations hereunder, Buyer shall be entitled to all remedies provided by law. If Seller becomes insolvent or makes an assignment for the benefit of creditors, or files or becomes subject to receivership or reorganization or bankruptcy proceedings, or becomes involved in labor difficulties, which in Buyer's opinion threaten Seller's ability to perform in a timely manner, Buyer may, in addition to any other rights or remedies it may have hereunder or at law, terminate the purchase order upon written notice to Seller; such termination shall be deemed a termination for default. Buyer's failure to notify Seller of a rejection of nonconforming materials or to specify with particularity any defect in nonconforming materials after rejection or acceptance thereof will not bar Buyer from pursuing any remedies for breach which it may otherwise have.

8.   **INSPECTION:** Buyer shall have the right to inspect and test the materials at Seller's plant any time prior to shipment and to conduct additional inspections at any time after arrival at the job site. The making or failure to make any inspection of, or payment for or acceptance of, the materials shall not impair Buyer's right to later reject nonconforming materials, or to avail itself of any other remedy to which Buyer may be entitled, notwithstanding Buyer's knowledge of the nonconformity,



LONG FORM
VERSION 1.0

# PURCHASE ORDER

its substantiality, or the ease of its discovery. Seller shall be liable for all additional inspection, reshipment and return costs on nonconforming materials. Seller shall not replace returned materials unless so directed by Buyer in writing.

9. **WARRANTIES:** Seller warrants to Buyer that it has fully reviewed the Attachments, specifications, drawings, samples or other descriptions contained in this Agreement and in the Prime Contract. Seller warrants to Owner, Architect, and Buyer that all materials and equipment furnished shall be new, unless otherwise explicitly specified in the Purchase Order Documents and that all Work shall be of good quality, free from faults and defects and shall be fit and appropriate for the purpose intended and in full conformance with the Attachments, specifications, performance standards, drawings, samples or other descriptions contained herein or in the Prime Contract for the period set forth in the Prime Contract. All Work not conforming to these requirements, including substitutions not properly approved and authorized, shall be considered defective. The warranty provided in this Section 9 shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Purchase Order Documents. The representations and warranties in this Section 9 shall survive the termination or completion of this Agreement. In addition to the foregoing warranties, Seller shall be required to provide all warranties required in the Prime Contract to be provided by Buyer that relate, in any manner, to the Seller's Work.

10. **INFRINGEMENT:** Seller shall pay all royalties and licensing fees arising in connection with the sale or use of materials hereunder. Seller further undertakes and agrees to defend, at Seller's expense, all suits, actions or proceedings in which Buyer, its successors, assigns, customers or users of its customer's products are made defendants for actual or alleged infringement of any U.S. or foreign letters patent, copyrights or trademarks resulting from the use or purchase of any materials furnished under this Agreement, and Seller agrees to pay or discharge any and all judgments or decrees which may be rendered in any such suit, action or proceeding against such defendants therein.

11. **COMPLIANCE:** Seller's performance shall in all ways strictly conform with all applicable laws, regulations, safety orders, labor agreements and working conditions to which it is subject, including, but not limited to, all State, Federal and local non-discrimination in employment provisions, and all applicable provisions required by the Prime Contract and by Buyer's own internal safety program, and all local regulations and building codes. Seller shall execute and deliver all documents as may be required to effect or evidence compliance.

12. **INDEMNITY:** Seller assumes all risk in furnishing the materials and services ordered hereunder, and will indemnify, hold harmless and defend Buyer and Owner against any and all losses, damages, liabilities and claims of any kind whatsoever, including actual attorneys' fees and experts' or consultants' fees, which arise directly or indirectly out of the performance or nonperformance of this purchase order including, but not limited to, losses of any materials ordered hereunder and injuries to property and to persons, including death. This indemnity applies regardless of any active

and/or passive negligent act or omission of Buyer or Owner or their agents or employees. Seller, however, shall not be obligated under this Agreement to indemnify Buyer or Owner for the sole negligence or willful misconduct of Buyer or Owner or their agents or employees. The indemnity set forth in this paragraph shall not be limited by the insurance requirements set forth in Paragraph 15.

12. **BOND:** Seller understands and agrees to furnish a Material Supply Bond, to be executed by a Surety approved by the Subcontractor. Bond shall be in 100% of the Purchase Order Value.

13. **ASSIGNMENTS, SETOFF:** Any delegation, subletting or assignment by operation of law or otherwise, of all or any portion of the obligations to be performed by Seller without the prior written consent of Buyer shall be void. In the event of any transfer, hypothecation or assignment by Seller, without Buyer's consent, of the right to receive all or any part of any payments due or to become due hereunder, Buyer may, at any time thereafter withhold any or all monies or payments due or to become due hereunder until final payment is due and all conditions precedent to such payment are satisfied. Buyer may, at its option setoff any amounts otherwise due from Buyer to Seller under this purchase order against any delinquent amounts or liabilities which are due to Buyer or its commonly controlled affiliates from Seller.

14. **APPLICABLE LAW – DEFINITIONS:** The definitions of terms used, interpretation of this Agreement and the rights of all parties hereunder, shall be governed by, and shall be interpreted in accordance with the laws of the state and locality in which the project is located without regard to any state's choice or conflict of law statutes. Whenever Buyer is not the ultimate consumer of the materials, all rights, benefits and remedies conferred upon Seller hereunder shall accrue and be available to and are for the express benefit of any successors in interest to the materials, including the ultimate consumer of the materials. The materials means the supplies, drawings, data and other property and all services, including design, delivery, installation, inspection and testing specified or required to furnish the materials or services ordered.



LONG FORM
VERSION 1.0

# PURCHASE ORDER

15. **INSURANCE AND CLAIMS:** If Seller or its employees or agents come onto Buyer's premises or project in connection with this purchase order, Seller agrees to carry (i) Comprehensive General Liability Insurance covering personal injuries (including death) in the amount of $1,000,000.00 per occurrence, and (ii) automobile liability insurance covering bodily injuries (including death) in the amount of $1,000,000.00 per person, and $1,000,000.00 per occurrence, property damage in the amount of $1,000,000.00 per occurrence, and products liability in the amount of $1,000,000.00. Seller further agrees to provide and maintain Workers' Compensation Insurance in conformity with the laws of the state in which such premises or project is located and Employer's Liability Insurance in the amount of $500,000.00 per occurrence if requested by Buyer. Seller shall submit written proof of such insurance to Buyer prior to entrance on Buyer's premises or project. Seller shall supply such bonds as are required by Buyer.

16. **COMPLIANCE WITH LICENSE LAW:** Sellers shall have all licenses required by the appropriate authorized authority, and maintain said licenses during the full term of this purchase order.

17. **DISPUTES:** Buyer may, at its sole option, elect to arbitrate any dispute, the value of which is less than $50,000.00, arising out of or related to this purchase order or the breach thereof, in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. The existence of a dispute between Buyer and Seller, not involving a material default by Buyer in performance of a condition precedent to Seller's performance, shall not relieve Seller of its obligation to perform under this Agreement. In the event either party becomes involved in litigation or arbitration arising out of this Agreement, the prevailing party shall be fully compensated for the cost of its participation in such proceedings, including the cost incurred for attorneys' fees and experts' fees. Unless judgment goes by default, the attorneys' fee awarded shall not be computed in accordance with any court schedule, but shall be such as to fully reimburse all attorneys' fees actually incurred in good faith, regardless of the size of a judgment, it being the intention of the parties to fully compensate for all attorneys' fees and experts' fees paid or incurred in good faith. Disputes not arbitrated pursuant to this provision shall be litigated.

BUYER:

**RANGER GLASS EAST COAST**

_____
(Signature)

_____
(Typed/Printed Name)

_____
(Title)

SELLER:

_____

_____
(Signature)

_____
(Typed/Printed Name)

_____
(Title)

## PURCHASE ORDER CONFIRMATION

Your Purchase Order will be sent to production only with your signature accepting the technical specification measurements and quantities specified.

Signature: _____

Date: _____
The production period starts after your approve date.

This purchase order id bounded by our terms of sale and this terms Supersede any others previous agreement.

## TERMS OF SALE

1.  ES WINDOWS agrees to furnish only the goods described in the order confirmation / acknowledgment / pro forma or quotation, which may vary from project plans, specifications, and/or purchase orders.
2.  The contract price is based solely upon the particular drawings, specifications, makeups, or other contract documents, which are specifically identified in the quotation. Items omitted are excluded.
3.  The contract price is conditioned upon payment within 30 days of receipt of materials with no retainage allowed.
4.  The time for delivery shown on the face of the order confirmation / acknowledgment / pro forma, if any, is an estimate only. ES WINDOWS will not be liable for any loss or damage to Buyer or others due to delay or not delivering in accordance with the estimated date regardless of the cause. ES WINDOWS will select the method of delivery.
5.  Completed orders unable to be accepted within 30 days of the original ship date are subject to storage charges. Fees will be assessed at $15 per unit per month. The storage charges will be payable net 30 days. ES WINDOWS will not be liable for damage to materials stored longer than 60 days nor will ES WINDOWS be liable for damage or failure of any materials stored in any manner contrary to industry standards and/or specific storage requirements identified by ES WINDOWS in any product materials.
6.  ES WINDOWS reserves the right to charge any and all unknown surcharges and miscellaneous costs assessed by our vendors.
7.  ES WINDOWS may, in its sole discretion, agree to grant credit terms to Buyer. ES WINDOWS will not be liable to Buyer for any refusal to grant credit. Any credit terms are subject to ES WINDOWS continuing approval of Buyers credit. If in ES WINDOWS sole discretion Buyers credit or financial standing becomes unsatisfactory ES WINDOWS may withdraw or modify the credit terms. Buyer shall be responsible for ES WINDOWS costs of collection including reasonable attorney's fees in the event of nonpayment.

PLAINTIFF'S EXHIBIT

5

8. Unless otherwise agreed in writing by ES WINDOWS, all goods, including those produced to meet an exact specification, shall be subject to tolerances and variations consistent with the usage of trade, regular factory practices, and practical testing and inspection methods.

9. ES WINDOWS has no system design or application responsibility to Buyer or any third party.

10. ES WINDOWS EXPRESSLY DISCLAIMS ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AND ANY OTHER OBLIGATION OR LIABILITY NOT EXPRESSLY SET FORTH IN ITS STANDARD TERMS OF WARRANTY. ES WINDOWS SHALL NOT BE LIABLE UNDER ANY CIRCUMSTANCES FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES.

11. All claims for breakage are the responsibility of the consignee, and claims must be filed by the consignee.

12. ES WINDOWS provides a limited warranty. Its terms are set out in ES WINDOWS separate warranty certificate available on request. ES WINDOWS will not accept any charge or expense, including labor for modification, removing, inspecting, or installing the goods. ES WINDOWS may void the limited warranty upon products for which ES WINDOWS has not been paid. ES WINDOWS limited warranty as provided to Buyer may only be modified upon written approval of ES WINDOWS President or Vice President(s). Any verbal representations intended to modify any existing ES WINDOWS' warranty shall be invalid and unenforceable against ES WINDOWS. Extended warranties may be available at additional cost and are subject to management and technical approval of glazing details.

13. No goods may be returned to ES WINDOWS for credit without prior written consent. After Buyers order has been accepted, the order may not be modified, canceled or changed without ES WINDOWS consent. Buyer shall be responsible to ES WINDOWS for reasonable cancellation or order change charges.

14. ES WINDOWS shall not be obligated to make any changes or additions to the goods described in the order confirmation / acknowledgment / proforma or quotation unless ES WINDOWS agrees in writing and an equitable adjustment are made if necessary to the price and delivery terms.

15. Buyer shall inspect the goods upon receipt and promptly notify ES WINDOWS of any claim that the goods are nonconforming. ES WINDOWS shall be allowed reasonable opportunity to inspect and cure any claim of alleged non-conformity. Buyer may arrange to inspect at the place of manufacture provided inspection does not interfere with ES WINDOWS operations and the consequent approval or rejection shall be made before shipment of the goods.

16. Buyer acknowledges that the quoted prices do not include freight, manufacturer's gross receipts taxes, sales or use taxes, or any other state, local, and federal taxes and/or assessments that may be payable on the transaction unless otherwise stated in writing by ES WINDOWS. All additional delivery costs arising from local labor agreements shall be borne by the buyer.

17. Buyer acknowledges they are liable for State and local sales/use tax for the goods they are purchasing. Therefore, this order will be taxed in accordance with State and local tax laws to where the product is being shipped. In the event that this order is a nontaxable project, ES WINDOWS must have a valid and properly executed sales/use tax exemption certificate on file prior to the invoicing or you will be billed sales/use tax.

Once you are invoiced by ES WINDOWS it is your responsibility to make payment in full to ES WINDOWS.

18. All Orders are subject to and Buyer is bound by ES WINDOWS Terms of Sale without change, unless otherwise set forth in writing and accepted in writing by ES WINDOWS. To the extent any other terms and/or conditions from any other source, including Buyer, are deemed to conflict with ES WINDOWS Terms of Sale, ES WINDOWS Terms of Sale will govern.

19. Under no circumstances shall ES WINDOWS be liable to or agree to indemnify Buyer or any third party for any loss, costs, damage or expense (including attorney's fees) resulting from Buyer's or any third party's actions or conduct. Buyer shall indemnify and hold ES WINDOWS and its employees, agents, assigns and heirs harmless from and against any loss, costs, damage, or expense (including attorney's fees) resulting from any charge or claim of personal injury or property damage arising out of Buyer's performance under this order or Buyer's negligence or willful misconduct.



LONG FORM
VERSION 1.0

# PURCHASE ORDER

| Ranger Job Number: | EC520 | Purchase Order Number: | EC520-001 | Budget Code(s): | |
|---|---|---|---|---|---|

This Purchase Order ("Agreement") is made as of         , ("Effective Date"), between Ranger Glass East Coast, a Virginia corporation ("Buyer"), and ES Windows (Seller) in connection with the Prime Contract for the Project, dated with the Owner.

**BUYER**

Ranger Glass East Coast
43760 Trade Center Place, Suite 130
Dulles, VA 20166

**SELLER**

ES Windows
10653 NE Quaybridge CT
Miami, FL 33138

Phone:  (305) 904-8808 / 78
Fax: (305) 207-9518

**OWNER**

The Morris and Gwendolyn Cafritz Foundation
1825 K St NW, #1400
Washington, D.C. 20006

**PROJECT**

EC520 -- Art Place at Fort Totten
5180 South Dakota Avenue, NE
Washington D.C. 20011

**GENERAL CONTRACTOR**

Foulger-Pratt
9601 Blackwell Road, Suite 200
Rockville, MD 20850

**ARCHITECT**

Shalom Baranes Associates, PC
1010 Wisconsin Ave NW, #900
Washington, D.C. 20007

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES; CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS USE OR MODIFICATION. SOME CONSTRUCTION PRIME CONTRACTS MAY REQUIRE THE USE OF SPECIALIZED PROVISIONS NOT INCLUDED IN THIS FORM.



Delivery dates per "ART PLACE AT FORT TOTTEN Schedule 10-28-15.pdf" sent to Ranger on 10/29/15, and no by Attachment 2 in this document.

LONG FORM
VERSION 1.0

# PURCHASE ORDER

**1.** **MATERIAL TO BE PROVIDED:** Seller shall furnish the goods and material described below at the price or prices set forth opposite each item within the times stated below in accordance with the terms and provisions of the Prime Contract.

| Item | Description & Estimated Quantity | Delivery Date |
|------|----------------------------------|---------------|
| 001 | S/L Curtain Wall/ Storefront System: ES-7525/ ES-6025 | SEE ATTACHMENT 2 |
| 002 | SL Storefront System: ES 4520 | SEE ATTACHMENT 2 |
| 003 | Terrace Doors: ES-45T Thermally Broken Outswing | SEE ATTACHMENT 2 |
| 004 | Sliding Glass Door System: ES-SD450 Thermally Broken | SEE ATTACHMENT 2 |
| 005 | Fixed/Operable Window System: ES-P350/ ES-P450 Thermally Broken | SEE ATTACHMENT 2 |
| 006 | Medium Style Entrance Door System (Stock Lengths only) | SEE ATTACHMENT 2 |
| 007 | Glass: All exterior and interior glass | SEE ATTACHMENT 2 |
| 008 | Louver Framing: ES-6025 | SEE ATTACHMENT 2 |
| 009 | Misc. KD Extrusions: Custom Dies as needed for extruded trim MP-9 | SEE ATTACHMENT 2 |

| Total: | $4,430,291.00 | OK |
|--------|---------------|----|

\* Approximate Amount of Material Contract (Based on Estimated Quantity)

Ship to: 5180 South Dakota Avenue, NE        Via: Container        Mark: As per floor and building

Deliver F.O.B. Destination, Freight Prepaid and Allowed, to: <u>Job Site, 5180 South Dakota Ave, NE Washington, D.C.</u>
Mail and Email Invoices:    <u>Ranger Glass</u>
                            <u>19031 Westfield</u>
                            <u>Houston, TX 77073</u>
                            <u>chrisr@rangerglass.com</u>

Terms:  <u>Payment within 10 days from payment from Owner and/or General Contractor.</u>

**2.** **ENTIRE AGREEMENT:** This Purchase Order is the entire agreement between Ranger Glass East Coast and Seller with respect to the goods and materials and the Project, and supersedes all proposals, negotiations, stipulations, understandings, agreements, representations and warranties, if any, between Buyer and Seller with respect to the goods and materials and the Project which precede or accompany the execution of this Agreement. This Purchase Order consists of this Agreement, the Attachments listed in this Section 2 and the applicable terms, conditions, plans and specifications of the Prime Contract. Seller's acceptance is limited to the terms and conditions contained in this Purchase Order. Commencing performance or making deliveries or any acknowledgement of this Agreement by Seller shall constitute an acceptance of the terms of this Agreement by Seller. Buyer is to be bound only by the terms and conditions of this Purchase Order. Purchase Order Attachments are:

a)  Attachment 1.  <u>ES Windows Scope of Work Dated 10/15/2015</u>

b)  Attachment 2.  <u>Progress Metrics dated 10/12/2015</u>



| Please refer to our terms of sale |

LONG FORM
VERSION 1.0

# PURCHASE ORDER

**3.** CHANGES AND RIGHT TO TERMINATE: Changes will be binding on Buyer only if in writing and signed by the Buyer.

a) Buyer, for its convenience, may by written change order make any change, including, without limitation, additions or deductions in quantities ordered, changes in the specifications or drawings, changes in the time of delivery, or termination. Buyer may terminate or suspend, at its convenience, all or any portion of this order not shipped as of the date of termination or suspension of Seller's right to proceed with this Purchase Order. In the event of any change or termination, there shall be an equitable price adjustment by Buyer. If Seller maintains that Buyer's adjustment is not equitable, the price change shall be negotiated. In the event the parties cannot agree, the final determination shall be made in accordance with the dispute resolution provision of this Agreement. However, if unit prices have been designated as to materials maintained in the normal course of Seller's business as standard stock, such unit prices shall control all price adjustments for quantity changes. No change or termination shall relieve Buyer or Seller of any of their obligations as to any material shipped prior to Seller's receipt of the change, termination or suspension order. Any claim for adjustment by Seller hereunder must be asserted in writing within ten (10) days from Notice of the change or termination.

b) If the Owner shall order the Buyer to change, adjust, substitute, add to, delete from, suspend, or terminate the work included in this Purchase Order, Seller shall comply with Owner's order and the price or time of performance hereunder shall only be adjusted as allowed by Owner. If requested by Owner, Seller agrees to be bound to, and by, the dispute resolution procedure of the Prime Contract.

c) In the event of a termination for default, Buyer may, in addition to all other rights and remedies, purchase substitute items or services elsewhere and hold Seller liable for any and all excess costs incurred, including attorneys' fees and experts' and consultants' fees actually incurred.

**4.** PAYMENT: The price herein specified shall unless otherwise expressly stated within the terms of this Agreement, include all taxes and duties of any kind levied by federal, state, municipal, or other governmental authorities, which either party is required to pay with respect to the production, sale, use or shipment of the materials covered by this agreement, and all charges for packing, loading, insurance, shipping and unloading. Transportation costs are designated as part of the cost of the Seller and are only to be compensated for actual costs. Any and all damage to the goods and materials, until acceptance by Buyer at destination, shall be for the account of the Seller.

Seller's invoice shall set forth the items delivered to the project site, the date of delivery, and the unit cost and total costs of the items invoiced. Seller's right to payment is subject to the same payment provisions enforced upon Buyer by the terms of the Prime Contract. Buyer agrees to pay the seller for goods and materials actually delivered to the named destination under this Agreement, from funds received by Buyer, from Owner, for work of Seller as referenced in Buyer's Payment Applications, except payments withheld due to culpable acts or omissions of Seller.

**5.** RISK OF LOSS: Notwithstanding the terms of shipment, the risk of loss shall pass to Buyer only after delivery and acceptance by Buyer at the named destination.

**6.** DELIVERY: Time is of the essence of this Agreement. If no delivery date is specified on the face of this order, all deliveries of materials shall conform to the date or dates specified in writing from time to time by Buyer's representative. Should delivery for any reason fail to be timely, Seller shall be liable for all damages suffered by Buyer as a result of such failure, including, without limitation, any liquidated or other damages under Buyer's Prime Contract. In no event shall Seller be entitled to an extension beyond that allowed to Buyer under the terms of the Prime Contract.

**7.** DEFAULTS: If Seller fails to perform any of its obligations hereunder, Buyer shall be entitled to all remedies provided by law. If Seller becomes insolvent or makes an assignment for the benefit of creditors, or files or becomes subject to receivership or reorganization or bankruptcy proceedings, or becomes involved in labor difficulties, which in Buyer's opinion threaten Seller's ability to perform in a timely manner, Buyer may, in addition to any other rights or remedies it may have hereunder or at law, terminate the purchase order upon written notice to Seller; such termination shall be deemed a termination for default. Buyer's failure to notify Seller of a rejection of nonconforming materials or to specify with particularity any defect in nonconforming materials after rejection or acceptance thereof will not bar Buyer from pursuing any remedies for breach which it may otherwise have.

**8.** INSPECTION: Buyer shall have the right to inspect and test the materials at Seller's plant any time prior to shipment and to conduct additional inspections at any time after arrival at the job site. The making or failure to make any inspection of, or payment for or acceptance of, the materials shall not impair Buyer's right to later reject nonconforming materials or to avail itself of any other remedy to which Buyer may be entitled, notwithstanding Buyer's knowledge of the nonconformity,



LONG FORM
VERSION 1.0

# PURCHASE ORDER

its substantiality, or the ease of its discovery. Seller shall be liable for all additional inspection, reshipment and return cost on nonconforming materials. Seller shall not replace returned materials unless so directed by Buyer in writing.

9. **WARRANTIES:** Seller warrants to Buyer that it has fully reviewed the Attachments, specifications, drawings, samples or other descriptions contained in this Agreement and in the Prime Contract. Seller warrants to Owner, Architect, and Buyer that all materials and equipment furnished shall be new, unless otherwise explicitly specified in the Purchase Order Documents and that all Work shall be of good quality, free from faults and defects and shall be fit and appropriate for the purpose intended and in full conformance with the Attachments, specifications, performance standards, drawings, samples or other descriptions contained herein or in the Prime Contract for the period set forth in the Prime Contract. All Work not conforming to these requirements, including substitutions not properly approved and authorized, shall be considered defective. The warranty provided in this Section 9 shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Purchase Order Documents. The representations and warranties in this Section 9 shall survive the termination or completion of this Agreement. In addition to the foregoing warranties, Seller shall be required to provide all warranties required in the Prime Contract to be provided by Buyer that relate, in any manner, to the Seller's Work.

10. **INFRINGEMENT:** Seller shall pay all royalties and licensing fees arising in connection with the sale or use of materials hereunder. Seller further undertakes and agrees to defend, at Seller's expense, all suits, actions or proceedings in which Buyer, its successors, assigns, customers or users of its customer's products are made defendants for actual or alleged infringement of any U.S. or foreign letters patent, copyrights or trademarks resulting from the use or purchase of any materials furnished under this Agreement, and Seller agrees to pay or discharge any and all judgments or decrees which may be rendered in any such suit, action or proceeding against such defendants therein.

11. **COMPLIANCE:** Seller's performance shall in all ways strictly conform with all applicable laws, regulations, safety orders, labor agreements and working conditions to which it is subject, including, but not limited to, all State, Federal and local non-discrimination in employment provisions, and all applicable provisions required by the Prime Contract and by Buyer's own internal safety program, and all local regulations and building codes. Seller shall execute and deliver all documents as may be required to effect or evidence compliance.

12. **INDEMNITY:** Seller assumes all risk in furnishing the materials and services ordered hereunder, and will indemnify, hold harmless and defend Buyer and Owner against any and all losses, damages, liabilities and claims of any kind whatsoever, including actual attorneys' fees and experts' or consultants' fees, which arise directly or indirectly out of the performance or nonperformance of this purchase order including, but not limited to, losses of any materials ordered hereunder and injuries to property and to persons, including death. This indemnity applies regardless of any active and/or passive negligent act or omission of Buyer or Owner or their agents or employees. Seller, however, shall not be obligated under this Agreement to indemnify Buyer or Owner for the sole negligence or willful misconduct of Buyer or Owner or their agents or employees. The indemnity set forth in this paragraph shall not be limited by the insurance requirements set forth in Paragraph 15.

12. **BOND:** Seller understands and agrees to furnish a Material Supply Bond, to be executed by a Surety approved by the Subcontractor. Bond shall be in 100% of the Purchase Order Value.

13. **ASSIGNMENTS, SETOFF:** Any delegation, subletting or assignment by operation of law or otherwise, of all or any portion of the obligations to be performed by Seller without the prior written consent of Buyer shall be void. In the event of any transfer, hypothecation or assignment by Seller, without Buyer's consent, of the right to receive all or any part of any payments due or to become due hereunder, Buyer may, at any time thereafter withhold any or all monies or payments due or to become due hereunder until final payment is due and all conditions precedent to such payment are satisfied. Buyer may, at its option setoff any amounts otherwise due from Buyer to Seller under this purchase order against any delinquent amounts or liabilities which are due to Buyer or its commonly controlled affiliates from Seller.

14. **APPLICABLE LAW – DEFINITIONS:** The definitions of terms used, interpretation of this Agreement and the rights of all parties hereunder, shall be governed by, and shall be interpreted in accordance with the laws of the state and locality in which the project is located without regard to any state's choice or conflict of law statutes. Whenever Buyer is not the ultimate consumer of the materials, all rights, benefits and remedies conferred upon Buyer hereunder shall accrue and be available to and are for the express benefit of any successors in interest to the materials, including the ultimate consumer of the materials. The materials means the supplies, drawings, data and other property and all services, including design, delivery, installation, inspection and testing specified or required to furnish the materials or services ordered.



# PURCHASE ORDER

15. **INSURANCE AND CLAIMS:** If Seller or its employees or agents come onto Buyer's premises or project in connection with this purchase order, Seller agrees to carry (i) Comprehensive General Liability Insurance covering personal injuries (including death) in the amount of $1,000,000.00 per occurrence, and (ii) automobile liability insurance covering bodily injuries (including death) in the amount of $1,000,000.00 per person, and $1,000,000.00 per occurrence, property damage in the amount of $1,000,000.00 per occurrence, and products liability in the amount of $1,000,000.00. Seller further agrees to provide and maintain Workers' Compensation Insurance in conformity with the laws of the state in which such premises or project is located and Employer's Liability Insurance in the amount of $500,000.00 per occurrence if requested by Buyer, Seller shall submit written proof of such insurance to Buyer prior to entrance on Buyer's premises or project. Seller shall supply such bonds as are required by Buyer.

16. **COMPLIANCE WITH LICENSE LAW:** Sellers shall have all licenses required by the appropriate authorized authority, and maintain said licenses during the full term of this purchase order.

17. **DISPUTES:** Buyer may, at its sole option, elect to arbitrate any dispute, the value of which is less than $50,000.00, arising out of or related to this purchase order or the breach thereof, in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. The existence of a dispute between Buyer and Seller, not involving a material default by Buyer in performance of a condition precedent to Seller's performance, shall not relieve Seller of its obligation to perform under this Agreement. In the event either party becomes involved in litigation or arbitration arising out of this Agreement, the prevailing party shall be fully compensated for the cost of its participation in such proceedings, including the cost incurred for attorneys' fees and experts' fees. Unless judgment goes by default, the attorneys' fee awarded shall not be computed in accordance with any court schedule, but shall be such as to fully reimburse all attorneys' fees actually incurred in good faith, regardless of the size of a judgment, it being the intention of the parties to fully compensate for all attorneys' fees and experts' fees paid or incurred in good faith. Disputes not arbitrated pursuant to this provision shall be litigated.

**BUYER:**

RANGER GLASS EAST COAST

_____
(Signature)

_____
(Typed/Printed Name)

_____
(Title)

**SELLER:**

_____
(Signature)

_____
(Typed/Printed Name)

_____
(Title)

| Project | Customer | State | Total Project Amount | Amount Invoiced | Payments Received | Last Date of Work | Balance Owed |
|---|---|---|---|---|---|---|---|
| ART PLACE AT FORT TOTTEN | RANGER SPECIALIZED GLASS, INC | DC | $4,685,662.07 | $4,698,326.76 | $3,536,902.41 | 6/12/2017 and continuing work | $1,161,424.35 |



PLAINTIFF'S EXHIBIT

6

| INVOICE | AMOUNT | DATE |
|---------|--------|------|
| 134047 | $ 39,167.17 | 3/19/2374 |
| 134089 | $ 39,769.70 | 9/5/2016 |
| 134098 | $ 18,932.80 | 9/6/2016 |
| 134181 | $ 21,234.78 | 9/6/2016 |
| 134184 | $ 2,604.38 | 9/6/2016 |
| 134186 | $ 41,829.36 | 9/7/2016 |
| 134228 | $ 18,201.24 | 9/8/2016 |
| 134229 | $ 8,376.20 | 9/8/2016 |
| 134240 | $ 3,279.23 | 9/8/2016 |
| 134257 | $ 64,020.60 | 9/8/2016 |
| 134327 | $ 5,124.35 | 9/9/2016 |
| 134342 | $ 23,779.08 | 9/9/2016 |
| 134343 | $ 10,211.07 | 9/9/2016 |
| 134366 | $ 33,723.48 | 9/9/2016 |
| 134369 | $ 1,192.84 | 9/9/2016 |
| 134371 | $ 11,609.43 | 9/9/2016 |
| 134378 | $ 4,733.20 | 9/10/2016 |
| 134379 | $ 50,032.91 | 9/10/2016 |
| 134440 | $ 37,318.26 | 9/12/2016 |
| 134488 | $ 40,776.35 | 9/12/2016 |
| 134510 | $ 4,513.07 | 9/13/2016 |
| 134562 | $ 14,021.82 | 9/14/2016 |
| 134565 | $ 37,192.34 | 9/14/2016 |
| 134592 | $ 49,715.32 | 9/14/2016 |
| 134680 | $ 15,998.05 | 9/15/2016 |
| 134821 | $ 5,584.16 | 9/19/2016 |
| 134872 | $ 95.00 | 9/20/2016 |
| 134989 | $ 279.96 | 9/22/2016 |
| 135173 | $ 9,630.95 | 9/25/2016 |
| 135189 | $ 7,450.33 | 9/26/2016 |
| 135190 | $ 2,329.08 | 9/26/2016 |
| 135216 | $ 6,207.75 | 9/26/2016 |
| 135326 | $ 13,295.69 | 9/28/2016 |
| 135329 | $ 4,426.03 | 9/28/2016 |
| 135446 | $ 9,520.62 | 9/29/2016 |
| 135576 | $ 3,357.72 | 10/4/2016 |
| 136071 | $ 1,196.60 | 10/11/2016 |
| 136282 | $ 190.00 | 10/14/2016 |
| 136521 | $ 7,721.39 | 10/20/2016 |
| 136788 | $ 14,071.51 | 10/25/2016 |
| 136935 | $ 16,109.75 | 10/27/2016 |
| 137214 | $ 294.03 | 11/1/2016 |
| 137578 | $ 5,225.65 | 11/8/2016 |
| 137637 | $ 24,417.25 | 11/9/2016 |
| 137664 | $ 38,588.10 | 11/10/2016 |
| 137682 | $ 4,609.86 | 11/10/2016 |
| 137683 | $ 6,521.59 | 11/10/2016 |
| 137735 | $ 360.00 | 11/11/2016 |
| 137792 | $ 39,393.47 | 11/12/2016 |
| 137855 | $ 23,285.11 | 11/14/2016 |
| 137890 | $ 1,093.34 | 11/15/2016 |

| | | | |
|---|---|---:|---|
| 137891 | $ | 1,230.10 | 11/15/2016 |
| 137892 | $ | 1,146.51 | 11/15/2016 |
| 138214 | $ | 12,012.82 | 11/21/2016 |
| 138224 | $ | 37,594.37 | 11/21/2016 |
| 138227 | $ | 2,237.28 | 11/21/2016 |
| 138276 | $ | 9,962.24 | 11/21/2016 |
| 138362 | $ | 760.00 | 11/23/2016 |
| 138723 | $ | 67.56 | 11/29/2016 |
| 138726 | $ | 2,860.00 | 11/29/2016 |
| 138795 | $ | 1,816.38 | 11/30/2016 |
| 138796 | $ | 113.37 | 11/30/2016 |
| 139071 | $ | 2,250.08 | 12/6/2016 |
| 139095 | $ | 337.90 | 12/6/2016 |
| 139096 | $ | 460.25 | 12/6/2016 |
| 139556 | $ | 1,839.21 | 12/14/2016 |
| 139944 | $ | 27,474.23 | 12/20/2016 |
| 140089 | $ | 190.00 | 12/21/2016 |
| 140141 | $ | 1,587.45 | 12/22/2016 |
| 140579 | $ | 1,983.97 | 12/29/2016 |
| 140580 | $ | 800.10 | 12/29/2016 |
| 141128 | $ | 3,887.00 | 1/19/2017 |
| 141131 | $ | 10,417.22 | 1/19/2017 |
| 141437 | $ | 68,205.21 | 1/26/2017 |
| 141438 | $ | 985.15 | 1/26/2017 |
| 141440 | $ | 508.54 | 1/26/2017 |
| 141958 | $ | 914.90 | 2/7/2017 |
| 141960 | $ | 1,126.61 | 2/7/2017 |
| 141964 | $ | 10,231.04 | 2/7/2017 |
| 142001 | $ | 1,126.58 | 2/7/2017 |
| 142348 | $ | 10,229.77 | 2/14/2017 |
| | | | |
| Total Owed | $ | 1,056,957.80 | |
| | | | |
| 142629 | $ | 16,391.68 | 2/20/2017 |
| 142925 | $ | 2,267.22 | 3/1/2017 |
| 142926 | $ | 12,001.12 | 3/1/2017 |
| 143370 | $ | 4,532.24 | 3/10/2017 |
| 143371 | $ | 1,943.50 | 3/10/2017 |
| 143374 | $ | 26,053.03 | 3/10/2017 |
| 143651 | $ | 4,103.66 | 3/17/2017 |
| 143721 | $ | 6,129.12 | 3/21/2017 |
| 143972 | $ | 15,312.13 | 3/27/2017 |
| 143973 | $ | 7,844.72 | 3/27/2017 |
| 144049 | $ | 4,476.18 | 3/28/2017 |
| 144050 | $ | 1,270.31 | 3/28/2017 |
| 144172 | $ | 2,141.64 | 3/30/2017 |
| | $ | 104,466.55 | |
| | | | |
| | $ | 1,161,424.35 | |



**ESB**
*Attorneys at Law*

**Hal Emalfarb**

Emalfarb,
Swan & Bain

August 10, 2017

Nancy Manno
AVP, Surety Claims
Berkley Surety Group
412 Mt. Kemble Avenue
Suite 310N
Morristown, N.J. 07960

Bond Claim #:      01899994
Claim Amount:   $1,161,424.35
Claimant:            C.I. Energia Solar, S.A.
Contractor:         Foulger-Pratt
Project:               Art Place at Fort Totten
Our File:            7307.0012

Dear Ms. Manno:

Enclosed please find the Proof of Claim, supporting documents, and Notice of Payment Bond claim for work furnished to your principal, Ranger Specialized Glass, Inc., Trade Center Place Suite 130, Dulles, VA 20166 by our client C.I. Energia S.A., Quaybridge Ct. Miami, Florida 33138 for the project listed above.

The Proof of Claim was signed when there was still continuing shipments to the site at Art Place at Fort Totten. We were informed by our client that the last date materials were shipped was on July 29, 2017.

Please contact me and verify receipt of this letter and all supporting documents.

Please note I will be out of town until August 15, 2017.
Please contact my paralegal, Pamela Hoffman to verify the enclosed documents and let us know what else you may need.

Very Truly Yours,

Emalfarb, Swan & Bain

Hal Emalfarb

Cc: Shawn Whittaker

Encl.

HAE/ph

440 Central Avenue
Highland Park, IL 60035
Phone: 847-432-6900
Fax: 847-432-8950



PLAINTIFF'S
EXHIBIT
7

*Office with independent local counsel:* • Toronto, Canada • Montreal, Canada • Anchorage, AK • Birmingham, AL • Little Rock, AR • Phoenix, AZ • San Diego, CA • San Francisco, CA • Los Angeles, CA • Boulder, CO • Colorado Springs, CO • Denver, CO • Hartford, CT • Wilmington, DE • Fort Lauderdale, FL • Atlanta, GA • Honolulu, HI • Des Moines, IA • Boise, ID • Chicago, IL • Indianapolis, IN • South Bend, IN • Leawood, KS • Louisville, KY • Baton Rouge, LA • Boston, MA • Quincy, MA • Baltimore, MD • Portland, ME • Detroit, MI • St. Paul, MN • Jackson, MS • Greensboro, NC • Grand Forks, ND • Omaha, NE • Hanover, NH • Newark, NJ • Albuquerque, NM • Las Vegas, NV • New York, NY • Buffalo, NY • Auburn, NY • Cincinnati, OH • Cleveland, OH • Tulsa, OK • Portland, OR • Philadelphia, PA • Pittsburgh, PA • San Juan, PR • Providence, RI • Charleston, SC • Columbia, SC • Sioux Falls, SD • Memphis, TN • Nashville, TN • Dallas, TX • Sandy, UT • Alexandria, VA • Christiansted, VI • Burlington, VT • Bellevue, WA • Milwaukee, WI • Charleston, WV • Casper, WY

Proof of Claim

---

ARTPLACEATFORTTOTTEN   5180 South Dakota Avenue, Unit E     Washington, DC  20011  | $1,161,424.35

STATE OF FLORIDA COUNTY OF DAD ss:

Carlos Amin, being duly sworn, deposes and says:

1. That he is the authorized representative on file as Claimant herein C.I. Energia Solar, S.A.,(a corporation under the laws of Columbia) with an address of 10653 NE Quaybridge Ct. Miami, Florida  33138, and with a Federal Taxpayer ID No. or Social Security No. which is NOT AVAILABLE.

2. That RANGER SPECIALIZED GLASS, INC. hereinafter called ("Contractor"or"Ranger") was at and before the filing of this Proof of Claim, and still is, justly and truly indebted to Claimant, in the sum of $1,161,424.35, for labor, materials, equipment, supplies and/or services heretofore furnished to said Supplier for use in the performance of Supplier's contract with Foulger-Pratt 9601 Blackwell Road, Suite 200, Rockville, Maryland 20850.

OWNER:   The Morris and Gwendolyn Cafritz Foundation 1825 K Street NW Washington, D.C. 20006

PROJECT:   Art Place at Fort Totten 5180 South Dakota Avenue, Unit E, Washington, D.C.  20011

3. Attached is itemized statement of claim together with supporting evidence, consisting of copy of subcontract or purchase order, invoices or pay applications signed delivery receipts for materials, equipment or supplies and/or other documentation consisting of windows and curtainwall.

4. That the date on which Claimant last furnished any labor, material, equipment or supplies and services in connection with said claim was June 12, 2017, and continuing work.

5. That Claimant represents it is not indebted to anyone, and has satisfied in full all claims, for labor, materials, supplies and/or other things of value that Claimant purchased, furnished, fabricated or supplied for use in connection with the aforesaid contract, except those noted on the back of this form, and no such payments have been made by notes which are unpaid at this time.

6. Claimant represents that there are no setoffs, counterclaims, back charges, or other credits due said RANGER SPECIALIZED GLASS, INC. against said claim, and that Claimant is not indebted to said RANGER SPECIALIZED GLASS, INC. on this, or on any other RANGER SPECIALIZED GLASS, INC. account, and that Claimant does not hold any note or security of any kind whatsoever for said debt, and Claimant has not assigned or pledged this claim to another.

7. Claimant certifies that all matters acknowledged and aware by CI Energia Solar S.A, are cured, and to the extend of the open and incomplete items, CI Energia Solar takes appropriate steps to remediate and cure all claims as per the terms of sale.

8. That this affidavit is made in support of the above described claim against, and for the purpose of inducing, Surety for said RANGER SPECIALIZED GLASS, INC., to pay said claim under the bond which it executed as Surety for said Supplier.

9. That as a further inducement to Surety for said RANGER SPECIALIZED GLASS, INC making payment at this time, Claimant hereby agrees that all limited warranties required under the terms of the aforesaid contract pertaining to the work, labor and materials furnished by the undersigned shall remain in full force and effect in accordance with their terms which, however shall not be extended nor enlarged hereby.

BCI4a

C.I. Energia Solar, S.A.

Carlos Amin

Subscribed and sworn to before me this
_____ 12th _____ day of June 2017

_(Notary Public)_

DEBORAH J ROWE
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
August 09, 2019

# WHITTAKER & ASSOCIATES, P.C.

1010 ROCKVILLE PIKE, SUITE 607
ROCKVILLE, MARYLAND 20852
PHONE (301) 838-4502
FAX (301) 838-4505

SHAWN C. WHITTAKER, ESQ. (DC, MD, VA)
SHAWN@WHITTAKER-LAW.COM

WWW.WHITTAKER-LAW.COM

SCOTT M. MYERS, ESQ. (DC, MD, PA)
SCOTT@WHITTAKER-LAW.COM

MICHELE WITHEROW, ESQ. (MD)
MICHELE@WHITTAKER-LAW.COM

### NOTICE OF PAYMENT BOND CLAIM

October 20, 2017

## BY CERTIFIED MAIL 7016 1970 0001 1028 1082
## RETURN RECEIPT REQUESTED

Foulger-Pratt Contracting, LLC
9601 Blackwell Road, Suite 200
Rockville, MD 20850

## BY CERTIFIED MAIL 7016 1970 0001 1028 1099
## RETURN RECEIPT REQUESTED

Travelers Casualty and Surety Company of America
One Tower Square
Hartford, CT 06183

## BY CERTIFIED MAIL 7016 1970 0001 1028 1105
## RETURN RECEIPT REQUESTED

Art Place at Ft Totten, LLC
c/o: Calvin Cafritz Enterprises
1828 L Street, NW, Ste. 703
Washington, DC 20036

## BY CERTIFIED MAIL 7016 1970 0001 1028 1112
## RETURN RECEIPT REQUESTED

Ranger Specialized Glass, Inc.
c/o: R/A: Robert Malone
19031 Aldine Westfield Road
Houston, TX 77073



PLAINTIFF'S
EXHIBIT

8

# WHITTAKER & ASSOC, P.C.

**BY CERTIFIED MAIL 7016 1970 0001 1028 1129**
**RETURN RECEIPT REQUESTED**

Ranger Glass East Coast, Inc.
c/o: R/A: Legaline Corporate Services, Inc.
1900 Campus Commons Drive, Ste. 100
Reston, VA 20191

Re:   Art Place at Fort Totten
5180 South Dakota Avenue, NE
Washington, DC 20011
Payment Bond No: 106033098
Payment Bond Date:  September 8, 2014
Claimant: C.I. Energia Solar, S.A./E.S. Windows, LLC
Amount of Claim:  $1,161,424.35

To whom it may concern:

C.I. Energia Solar S.A., Inc./E.S. Windows, LLC ("CIES") contracted with Ranger Specialized Glass, Inc./Ranger Glass East Coast, Inc. ("Ranger"), a subcontractor on the Project, to supply glass and window systems materials beginning on or about September 5, 2016 for the above-mentioned project pursuant to the aforementioned payment bond between the Principal, Foulger-Pratt Contracting, LLC (hereinafter "Foulger"), and the Surety, Travelers Casualty and Surety Company of America. *See Quote/Purchase Order attached as Ex. 1.* The most recent date of work or delivery for materials supplied by CIES was July 29, 2017.  CIES earned a total amount of $4,698,326.76 on the Project, and has received total payments of $3,536,902.41.  There remains due and owing to CIES for materials furnished for the prosecution of the above-mentioned project the sum of $1,161,424.35 as of the date of this Notice.

Pursuant to § 7.1 of the payment bond, if CIES does receive an answer to its Claim within sixty days, CIES does hereby reserve its claim to file suit pursuant to the payment bond referred to above.

Executed this 20th day of October, 2017.

C.I. Energia Solar S.A., Inc./E.S. Windows, LLC

By:   _____
Its Attorney and Agent
Shawn C. Whittaker

ENCLOSURES

cc:   C.I. Energia Solar S.A., Inc./E.S. Windows, LLC (via e-mail)
Matt Morise (via e-mail)
Michael McNamara, Esq. (via e-mail)

# ENERGIA SOLAR
# WINDOWS

ES WINDOWS LLC                                    DATE: OCTOBER 28, 2015

TO: RangerGlass.
    19031 Aldine westfield.
    Houston, TX 77073

| SALES CONTACT | PROJECT NAME | PAYMENT TERMS |
|---|---|---|
| Carlos Amin | Art Place at Fort Totten Washington, DC. | TBD |

This Quote was performed with reference on drawings, sheets A0-00 to A5.29a issued for bid on January 17th, 2014 and EC520 Art Place at Fort Totten -Progress Metrics (Sent to ESW 8.13.15).

This quote is for ESWindows LLC. to supply the following systems:

1. **SL Curtain Wall/ Storefront System:** ES-7525/6025 SL thermally improved Curtain Wall system. Typical profile of the system is 7.5"/6.0" deep by 2.5" wide. The system will be shipped as SL extrusions & Crated Glass to Washington, DC.

2. **SL Storefront System:** ES-4520 4-Way Captured SL thermally Broken Storefront system. Typical profile of the system is 4.5" deep by 2" wide. The system will be shipped as SL extrusions & Crated Glass to Washington, DC.

3. **Terrace Doors:** ES-45T Thermally Broken Out-swing acting terrace door. The system will be shipped as pre-glazed units and it will be delivered to Washington, DC. Standard Hardware included (Butt hinges, Three-Point lock, Lever handle back to back, thumb-turn, keyed cylinder).

4. **Sliding Glass Door System:** ES-SD450 Thermally Broken Sliding door system. The system will be shipped as pre-glazed units and it will be delivered to Washington, DC. Standard hardware included (Multi-point lock mechanism, Involute handle Kit, Rollers, thumb turn and keyed cylinder, piles, gaskets, thermal break bars).

**EXHIBIT**

1

5. <u>Fixed/Operable Window System:</u> ES-P350/ 450 thermally broken Fixed/ Casement/ Project-Out (Awning) window system. Typical profile of the system is 3.5"/4.5" deep. The system will be shipped as pre-glazed units and it will be delivered to Washington, DC. Standard Hardware included (Multipoint Lock, Insect Screens, Insulbars, Gaskets, frames assembly fasteners).

6. <u>Medium Style Entrance Door System:</u> ES-35 Out-swing acting entrance door. Typical profile of the system is 5" deep. The system will be shipped as SL extrusions & Crated Glass to Washington, DC. Hardware is not included.

## ES-7525 CURTAIN WALL/ STOREFRONT SYSTEM

Specifically included:

- Curtain Wall/ Storefront SL extrusions.
- Finish on Aluminum to be
  - AC-1: Duranar Sunstorm Silversmith UC121430F
  - AC-2: Duranar Charcoal Gray UC116880
  - AC-4: Duranar Sunstorm Oxford Blue UC116954F
  - *Project price may change depending on final UC aluminum reference color choice.*

- Gaskets, setting blocks & assembly fasteners.
- Fabrication of units @ shop.
- Glass configuration as follows:

  *1/4" SB60 Clear FT+ 1/2"Argon Filled MF+ 1/4" Clear HS*
  *1/4" SB60 Clear FT+ 1/2"Argon Filled MF+ 1/4" Clear HS+ Custom Frit*

- <u>6,140</u> total square feet coverage of ES-7525 Curtain Wall system@ Bldg A1.
- <u>4,492</u> total square feet coverage of ES-7525 Curtain Wall system@ Bldg A2.
- <u>509</u> total square feet coverage of ES-7525 Curtain Wall system@ Bldg A3.

## ES-6025 STOREFRONT SYSTEM

Specifically included:

- Storefront SL extrusions.
- Finish on Aluminum to be
  - AC-1: Duranar Sunstorm Silversmith UC121430F
  - AC-2: Duranar Charcoal Gray UC116880
  - AC-4: Duranar Sunstorm Oxford Blue UC116954F
  - AC-5: Duranar Sunstorm Pewter UC70191F
  - AC-13: Duranar Gray UC92329
  - *Project price may change depending on final UC aluminum reference color choice.*

- Gaskets, setting blocks & assembly fasteners.
- Fabrication of units @ shop.
- Glass configuration as follows:

*1/4" SB60 Clear FT+ 1/2"Argon Filled MF+ 1/4" Clear HS*
*1/4" SB60 Optigray FT+ 1/2"AS MF+ 1/4" Clear HS*
*1/4" SB60 Clear FT+ 1/2"Argon Filled MF+ 1/4" Clear HS+ PPG 1003-7 BlackHeart Frit*
*1/4" SB60 Clear FT+ 1/2"Argon Filled MF+ 1/4" Clear HS+ Custom Frit*

- <u>7,252</u> total square feet coverage of ES-6025 system@ Bldg A1.
- <u>8,375</u> total square feet coverage of ES-6025 system@ Bldg A2.
- <u>2,031</u> total square feet coverage of ES-6025 system@ Bldg A3.
- <u>692</u> total square feet coverage of ES-6025 system@ Lovers framing: X4, X5, X13, X14, X15, X16, X17, X18, X19, X20, X21, X22, X23, X24, X25, X26, X27, X28, X29, X30, X31 and X42.

## ES-4520 STOREFRONT SYSTEM

**Specifically included:**

- Storefront SL extrusions.
- Finish on Aluminum to be
    o AC-1: Duranar Sunstorm Silversmith UC121430F
    *Project price may change depending on final UC aluminum reference color choice.*

- Gaskets, setting blocks & assembly fasteners.
- Fabrication of units @ shop.
- Glass configuration as follows:

*1/4" Clear FT*

- <u>401</u> total square feet coverage of ES-6025 system@ Bldg A1.
- <u>453</u> total square feet coverage of ES-6025 system@ Bldg A2.
- <u>771</u> total square feet coverage of ES-6025 system@ Bldg A3.

## ES-35 MEDIUM STYLE ENTRANCE DOOR SYSTEM

**Specifically included:**

- Storefront SL extrusions.
- Finish on Aluminum to be
    o AC-1: Duranar Sunstorm Silversmith UC121430F
    o AC-2: Duranar Chatcoal Gray UC116880
    o AC-4: Duranar Sunstorm Oxford Blue UC116954F
    o AC-5: Duranar Sunstorm Pewter UC70191F
    o AC-13: Duranar Gray UC92329
    *Project price may change depending on final UC aluminum reference color choice.*

3

- Glass configuration as follows, all 1" thk IGU, unless otherwise noted:

*1/4" SB60 Clear FT+ 1/2"Argon Filled MF+ 1/4" Clear HS*
*1/4" Clear FT*
*1/4" SB60 Optigray FT+ 1/2"AS MF+ 1/4" Clear HS*
*1/4" SB60 Clear FT+ 1/2"Argon Filled MF+ 1/4" Clear HS+ PPG 1003-7 BlackHeart Frit*

- **1,087** total square feet coverage of ES-35 system@ Bldg A1.
- **1,226** total square feet coverage of ES-35 system@ Bldg A2.
- **395** total square feet coverage of ES-6025 system@ Bldg A3.
- SL parts for doors: 49B (1-120a), 46B (1S,13), 49C (1-130), 17 (1-101), 10A (1-100B), 39(1-100a), 49A (1-120), 23A (1-240a), 18 (1-250), 52A (1-240), 55A (1-240d), 37 (1-362a), 36(1-374B), 58A(1-374c), 59A-P(1-374c), W-A1C (1-370a), W-A3 (1-377a), W-A4a (1-378c), W-A4c (1-378a), W-A5a (1-383), W-A5b(1-384), 1-362a, 1-376a, 1-377b, 1-368a, 1-378b, 1-385, 86(2-110a), 82B(2-111C), 83B-1, 83BOH, 82A(2-111B), 83A-1, 83A, 73(2-111B), 71(2-S2,4), 70(2-210a), 68(2-210b), 64B(2-220a), 64A(2-220B), 88(2-366a), 2-380, 90(2-370), 94(2-362a), 2-381, W-A6a, W-A6c(2-386C), W-A6e-P (2-386b), 130(2-366), 2-371, 2-300, 2-376a, 2-383a, 2-762b, 99 (2-870C), 99(2-870B), 2-870a, 2-871, 123A(3-220a), 121B (3-320b), 121A (3-321b), 117A(3-321a), W-A6I(3-352b), 3-352C, W-A6G (3-T52d-4), W-A6G (3-T52d-4), W-A6G (3-T52d-4), W-A6G(3-T52d-4), 1-375c, 1-362b, 2-366, 2-383, 2-383b, 2-388a, 2-388b.

## ES-45T TERRACE DOOR

**Specifically included:**

- Frame/Leaf aluminum material.
- Finish on Aluminum to be
  - AC-1: Duranar Sunstorm Silversmith UC121430F
  - AC-4: Duranar Sunstorm Oxford Blue UC116954F
  - AC-5: Duranar Sunstorm Pewter UC70191F
  - *Project price may change depending on final UC aluminum reference color choice.*

- Labor for doors assembly @ ESW shop.
- Frame joinery silicone sealants.
- Glass configuration as follows, all 1" thk IGU, unless otherwise noted:

*Gl1: 1/4" SB60 Optigray Ft+ 1/2"as Mf+ 1/4"clear Hs*
*Gl6: 1/4" SB60 Optigray Ft+ 1/2"as Mf+ 1/4"clear Hs+ 0.060pvb+ 1/4" Clear Hs*

- **2,695** total square feet coverage of ES-35 system@ Bldg A1.
- **760** total square feet coverage of ES-35 system@ Bldg A2.
- Gaskets, setting blocks, frame assembly fasteners.

4

<u>ES-SD450 SLIDING GLASS DOOR SYSTEM</u>

Specifically included:

- Door frame/leaf aluminum material.
- Finish on Aluminum to be
    - AC-1: Duranar Sunstorm Silversmith UC121430F
    - AC-12: Duranar XL Sharp Cheddar UC116959XL
    - *Project price may change depending on final UC aluminum reference color choice.*
- Labor for doors assembly @ ESW shop.
- Frame joinery silicone sealants.
- Glass configuration as follows, all 1" thk IGU, unless otherwise noted:

  *Gl1: 1/4" Sb60 Optigray Ft+ 1/2"as Mf+ 1/4"clear Hs*

- <u>1,235</u> total square feet coverage of ES-35 system@ Bldg A2.
- <u>200</u> total square feet coverage of ES-35 system@ Bldg A3.
- Gaskets, setting blocks, frame assembly fasteners.

<u>ES-P350/450 FIXED/OPERABLE WINDOW SYSTEM</u>

Specifically included:

- Fixed/Project-Out window aluminum framing material.
- Finish on Aluminum to be
    - AC-1: Duranar Sunstorm Silversmith UC121430F
    - AC-2: Duranar Charcoal Gray UC116880
    - AC-4: Duranar Sunstorm Oxford Blue UC116954F
    - AC-5: Duranar Sunstorm Pewter UC70191F
    - AC-10: Duranar Eclipse Gray UC106669
    - AC-11: Duranar Fashion Gray UC51825
    - AC-12: Duranar XL Sharp Cheddar UC116959XL
    - AC-13: Duranar Gray UC92329
    - *Project price may change depending on final UC aluminum reference color choice.*
- Labor for windows assembly @ ESW shop.
- Frame joinery silicone sealants.
- Glass configuration as follows:

  *Gl1: 1/4" Sb60 Optigray Ft+ 1/2"as Mf+ 1/4"clear Hs*
  *Gl1a: 1/4" Sb60 Clear Ft+ 1/2"argon Filled Mf+ 1/4"clear Hs*
  *Gl4a: 1/4" Sb60 Optigray Ft+ 1/2"as Mf+ 1/4"clear Hs+ Ppg 1237-3 Ariel Frit*
  *Gl6: 1/4" Sb60 Optigray Ft+ 1/2"as Mf+ 1/4"clear Hs+ 0.060pvb+ 1/4" Clear Hs*

- <u>42,139</u> total square feet coverage of ES-P350/450 system@ Bldg A1.
- <u>25,936</u> total square feet coverage of ES-P350/450 system@ Bldg A2.
- <u>12,489</u> total square feet coverage of ES-P350/450 system@ Bldg A3.

- Gaskets, setting blocks, frame assembly fasteners.
- Insect screens for operable vents.

<u>**Also Included (KD Extrusions):**</u>

- Extruded aluminum material.
- Finish on Aluminum to be
  - AC-1: Duranar Sunstorm Silversmith UC121430F
  - AC-2: Duranar Charcoal Gray UC116880
  - AC-4: Duranar Sunstorm Oxford Blue UC116954F
  - AC-5: Duranar Sunstorm Pewter UC70191F
  - AC-10: Duranar Eclipse Gray UC106669
  - AC-11: Duranar Fashion Gray UC51825
  - AC-12: Duranar XL Sharp Cheddar UC116959XL
  - AC-13: Duranar Gray UC92329
  - *Project price may change depending on final UC aluminum reference color choice.*

- **(26)** Total Ln-ft of extruded aluminum (ES-6025-402) Ref. detail 12/A4.61.
- **(65)** Total Ln-ft of extruded aluminum (ES-6025-403) Ref. detail 12/A4.67.
- **(35)** Total Ln-ft of extruded aluminum (ES-6025-405) Ref. detail 3/A4.30 - 5/A3.40 - 2/A4.33 - 5A4.31.
- **(85)** Total Ln-ft of extruded aluminum (ES-6025-406) Ref. detail 1/A4.15.
- **(184)** Total Ln-ft of extruded aluminum (ES-6025-407) Ref. detail 13/A4.44B - 2/A4.51 - 13/A4.56.
- **(310)** Total Ln-ft of extruded aluminum (ES-6025-408) Ref. detail 12/A4.61 - 12/A4.67.
- **(698)** Total Ln-ft of extruded aluminum (ES-6025-410) Ref. detail 15/A4.50 - 5A4.51 - 2/A4-44B - 4/A4-44B - 13/A4-44B.
- **(698)** Total Ln-ft of extruded aluminum (ES-6025-411) Ref. detail 15/A4.50 - 5A4.51 - 2/A4-44B - 4/A4-44B - 13/A4-44B.
- **(2,772)** Total Ln-ft of extruded aluminum (ES-P350-402) Ref. detail 1/A4.11 - 5/A4.64 - 5/A4.70.
- **(26)** Total Ln-ft of extruded aluminum (ES-P350-403) Ref. detail 12/A4.61.
- **(6,292)** Total Ln-ft of extruded aluminum (ES-P350-404) Ref. detail 5/A4.71 - 1/A4.62 - 1/A4.71 - 3/A4.71 - 1/A4.70 - 7/A4.71 - 15/A4.63.
- **(35)** Total Ln-ft of extruded aluminum (ES-P350-405) Ref. detail 3/A4.64.
- **(467)** Total Ln-ft of extruded aluminum (ES- P350-406) Ref. detail 3/A4.75 - 9/A4.70 - 15/A4.71 - 7/A4.61.
- **(1,664)** Total Ln-ft of extruded aluminum (ES- P350-407) Ref. detail 15/A4.70 - 14/A4.70 - 6/A4.70 -7/A4.70 - 8/A4.70 - 3/A4.75.
- **(2,986)** Total Ln-ft of extruded aluminum (ES-P350-409) Ref. detail 14/A4.70 -7/A4.70 - 6/A4.70 - 5/A4.70.
- **(463)** Total Ln-ft of extruded aluminum (ES- P350-410) Ref. detail 15/A4.63 - 1/A4.62.

Not included in this Quote:

- Heat Soak for tempered glass lites.
- Steel tubing related to building structure.
- Metal Screens.
- Metal panels.
- Aluminum composite metal panel, unless otherwise stated in quote.
- Break Metals.
- MP-6, unless otherwise stated in quote.
- MP-9, unless otherwise stated in quote.
- Railings.
- Touch-up paint and attic stock.
- Structural Silicone for stick systems.
- Canopies and skylights (W-7).
- Insulation.
- Backpans.
- Break metal closures others than mentioned above.
- Louvers.
- Sunshades.
- Stainless steel sill flashings and counter flashing.
- Slab edge covers.
- Steel embeds.
- Microline trim extrusion. Ref. detail 06/A4.71
- Continuous angles to support lenses. Ref. detail 10/A5.06
- Window Treatments & Suspended Ceilings.
- Wall end caps.
- Soffits.
- Blank Off Panels.
- Structurally glazed operable walls.
- Nanawalls.
- Parapet assemblies, waterproofing at parapets and copings.
- Windows Washing Equipment.
- Aluminum framed folding system.
- Smoke seal, fire stopping and fire safing.
- Cleaning of glass and aluminum.
- Any Interior glazing, unless otherwise stated in quote.
- Installation of CW/WW/SF frames units at jobsite.
- Interior Caulking.
- Alum. Interlocking ramp.
- Wire or Fire rated glass.
- Hollow metal or fire rated doors.
- Aluminum or stainless steel sill flashings and counter flashing.
- Window Treatments & Suspended Ceilings.

7

- Furnish of installation hardware (Screws, Shims & Perimeter Caulking).
- Furring and Metal Studs.
- Automatic Sliding Doors.
- All-glass doors.
- Field quality control testing.
- Break metals for metal studs cladding.
- Revolving doors.
- Automatic entrances.
- Card readers, power suppliers, electronic devices for entrances.
- Hardware for entrance doors.
- Mock Ups.
- Laboratory testing for Mock Ups.
- Sales Taxes.

**Qualifications:**

- Structural evaluation for systems listed above was made based on file "Art Place Corner window Count". Special internal reinforcing may be required if conditions exceed the maximum checked.
- Engineering included with calculations package and wet stamp on front page only.
- The systems in this quote are not tested for the effects of earthquake motions according to SEI/ASCE 7.
- General contractor to coordinate, prior CW/WW/SF design, delivery of Updated CAD drawings and hardcopy plans.
- All WW/SF conditions were assumed w/ proper structural fastened surface at head & sill points.
- Delivery of material included in this quote was considered by floor on 40' steel containers. Container quantity has to be recalculated when the shipping sequence is issued. If final container quantity exceeds the estimated one on this offer, then additional charges will apply for this item.
- G.C to provide proper structural member @ 10'-10 ¾" height, to support opening marks 47A, 48A, 49A.
- G.C to provide proper structural member @ 9'-10 ¾" height, to support opening marks 47B, 48B, 49B.
- G.C to provide proper structural member @ 8'-10 ¾" height, to support opening marks 47C, 48C, 49C.
- G.C to provide proper structural member @ level 3, to support opening marks 65A, 65B and 67.
- G.C to provide proper structural member @ 12'-8" height, to support opening marks 73, 74 and 75.
- G.C to provide proper structural member @ 11'-7 ¼" height, to support opening marks 85, 86 and 87.
- Any change on Drawings or/and production sequence may result on a different glass optimization which may affect project price & lead times.

- Glass lites furnished in Quote are Heat Strengthened or Tempered in order to avoid suddenly breakage due to thermal stress.
- Ceramic Frit will be placed on glass surface No. 4.
- Hardware finish to be selected from the following standard colors: silver, black and white.
- Bluemax @ exterior surface of windows was included for all unitized systems.
- Trims, flashing, caps, fins, receptors and any additional extrusion to be shipped loose.
- Crating material included in quote for all unitized systems.
- Shop Drawings & Engineering are included in quote.
- Signed & Sealed Calculations are included in quote.
- Refer to our Terms of Sale which apply to all orders.

## AREA SCOPE:

Pricing is based on areas listed on this quote. Any other materials will be added to the final price.

| LEVEL | | | TOTAL SQFT |
|---|---|---|---|
| BLDG A1 | | | 58,627 |
| BLDG A2 | | | 41,182 |
| BLDG A3 | | | 16,069 |
| LOUVERS FRAMING | | | 692 |
| TOTAL PROJECT AREA | | | 116,570 |

## PROJECT PRICING:

| DESCRIPTION | PRICE |
|---|---|
| TOTAL PROJECT PRICE | $ 4,445,495 |

Sales Taxes are not included.
Quote is valid for 30 days.


Submitted by: _____
                    Carlos Amin

For:       ESWindows LLC
Date:      October 28, 2015

## PURCHASE ORDER CONFIRMATION

Your Purchase Order will be sent to production only with your signature accepting the technical specification measurements and quantities specified.


Signature: _____

Date: _____
The production period starts after your approve date.

This purchase order id bounded by our terms of sale and this terms Supersede any others previous agreement.


## TERMS OF SALE

1. ES WINDOWS agrees to furnish only the goods described in the order confirmation / acknowledgment / pro forma or quotation, which may vary from project plans, specifications, and/or purchase orders.
2. The contract price is based solely upon the particular drawings, specifications, makeups, or other contract documents, which are specifically identified in the quotation. Items omitted are excluded.
3. The contract price is conditioned upon payment within 30 days of receipt of materials with no retainage allowed.
4. The time for delivery shown on the face of the order confirmation / acknowledgment / pro forma, if any, is an estimate only. ES WINDOWS will not be liable for any loss or damage to Buyer or others due to delay or not delivering in accordance with the estimated date regardless of the cause. ES WINDOWS will select the method of delivery.
5. Completed orders unable to be accepted within 30 days of the original ship date are subject to storage charges. Fees will be assessed at $15 per unit per month. The storage charges will be payable net 30 days. ES WINDOWS will not be liable for damage to materials stored longer than 60 days nor will ES WINDOWS be liable for damage or failure of any materials stored in any manner contrary to industry standards and/or specific storage requirements identified by ES WINDOWS in any product materials.
6. ES WINDOWS reserves the right to charge any and all unknown surcharges and miscellaneous costs assessed by our vendors.
7. ES WINDOWS may, in its sole discretion, agree to grant credit terms to Buyer. ES WINDOWS will not be liable to Buyer for any refusal to grant credit. Any credit terms are subject to ES WINDOWS continuing approval of Buyers credit. If in ES WINDOWS sole discretion Buyers credit or financial standing becomes unsatisfactory ES WINDOWS may withdraw or modify the credit terms. Buyer shall be responsible for ES WINDOWS costs of collection including reasonable attorney's fees in the event of nonpayment.

10

8. Unless otherwise agreed in writing by ES WINDOWS, all goods, including those produced to meet an exact specification, shall be subject to tolerances and variations consistent with the usage of trade, regular factory practices, and practical testing and inspection methods.

9. ES WINDOWS has no system design or application responsibility to Buyer or any third party.

10. ES WINDOWS EXPRESSLY DISCLAIMS ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AND ANY OTHER OBLIGATION OR LIABILITY NOT EXPRESSLY SET FORTH IN ITS STANDARD TERMS OF WARRANTY. ES WINDOWS SHALL NOT BE LIABLE UNDER ANY CIRCUMSTANCES FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES.

11. All claims for breakage are the responsibility of the consignee, and claims must be filed by the consignee.

12. ES WINDOWS provides a limited warranty. Its terms are set out in ES WINDOWS separate warranty certificate available on request. ES WINDOWS will not accept any charge or expense, including labor for modification, removing, inspecting, or installing the goods. ES WINDOWS may void the limited warranty upon products for which ES WINDOWS has not been paid. ES WINDOWS limited warranty as provided to Buyer may only be modified upon written approval of ES WINDOWS President or Vice President(s). Any verbal representations intended to modify any existing ES WINDOWS' warranty shall be invalid and unenforceable against ES WINDOWS. Extended warranties may be available at additional cost and are subject to management and technical approval of glazing details.

13. No goods may be returned to ES WINDOWS for credit without prior written consent. After Buyers order has been accepted, the order may not be modified, canceled or changed without ES WINDOWS consent. Buyer shall be responsible to ES WINDOWS for reasonable cancellation or order change charges.

14. ES WINDOWS shall not be obligated to make any changes or additions to the goods described in the order confirmation / acknowledgment / proforma or quotation unless ES WINDOWS agrees in writing and an equitable adjustment are made if necessary to the price and delivery terms.

15. Buyer shall inspect the goods upon receipt and promptly notify ES WINDOWS of any claim that the goods are nonconforming. ES WINDOWS shall be allowed reasonable opportunity to inspect and cure any claim of alleged non-conformity. Buyer may arrange to inspect at the place of manufacture provided inspection does not interfere with ES WINDOWS operations and the consequent approval or rejection shall be made before shipment of the goods.

16. Buyer acknowledges that the quoted prices do not include freight, manufacturer's gross receipts taxes, sales or use taxes, or any other state, local, and federal taxes and/or assessments that may be payable on the transaction unless otherwise stated in writing by ES WINDOWS. All additional delivery costs arising from local labor agreements shall be borne by the buyer.

17. Buyer acknowledges they are liable for State and local sales/use tax for the goods they are purchasing. Therefore, this order will be taxed in accordance with State and local tax laws to where the product is being shipped. In the event that this order is a nontaxable project, ES WINDOWS must have a valid and properly executed sales/use tax exemption certificate on file prior to the invoicing or you will be billed sales/use tax.

Once you are invoiced by ES WINDOWS it is your responsibility to make payment in full to ES WINDOWS.

18. All Orders are subject to and Buyer is bound by ES WINDOWS Terms of Sale without change, unless otherwise set forth in writing and accepted in writing by ES WINDOWS. To the extent any other terms and/or conditions from any other source, including Buyer, are deemed to conflict with ES WINDOWS Terms of Sale, ES WINDOWS Terms of Sale will govern.

19. Under no circumstances shall ES WINDOWS be liable to or agree to indemnify Buyer or any third party for any loss, costs, damage or expense (including attorney's fees) resulting from Buyer's or any third party's actions or conduct. Buyer shall indemnify and hold ES WINDOWS and its employees, agents, assigns and heirs harmless from and against any loss, costs, damage, or expense (including attorney's fees) resulting from any charge or claim of personal injury or property damage arising out of Buyer's performance under this order or Buyer's negligence or willful misconduct.



LONG FORM
VERSION 1.0

# PURCHASE ORDER

| Ranger Job Number: | EC520 | Purchase Order Number: | EC520-001 | Budget Code(s): | |

This Purchase Order ("Agreement") is made as of         , ("Effective Date"), between Ranger Glass East Coast, a Virginia corporation ("Buyer"), and ES Windows (Seller) in connection with the Prime Contract for the Project, dated with the Owner.

**BUYER**

Ranger Glass East Coast
43760 Trade Center Place, Suite 130
Dulles, VA 20166

**SELLER**

ES Windows
10653 NE Quaybridge CT
Miami, FL 33138

Phone: (305) 904-8808 / 78
Fax: (305) 207-9518

**OWNER**

The Morris and Gwendolyn Cafritz Foundation
1825 K St NW, #1400
Washington, D.C. 20006

**PROJECT**

EC520 – Art Place at Fort Totten
5180 South Dakota Avenue, NE
Washington D.C. 20011

**GENERAL CONTRACTOR**

Foulger-Pratt
9601 Blackwell Road, Suite 200
Rockville, MD 20850

**ARCHITECT**

Shalom Baranes Associates, PC
1010 Wisconsin Ave NW, #900
Washington, D.C. 20007

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES; CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS USE OR MODIFICATION. NAME CONSTRUCTION PRIME CONTRACTS MAY REQUIRE THE USE OF SPECIALIZED PROVISIONS NOT INCLUDED IN THIS FORM.

Initials _____/_____               PURCHASE ORDER



Delivery dates per "ART PLACE AT FORT TOTTEN
Schedule 10-28-15.pdf" sent to Ranger on 10/29/15,
and no by Attachment 2 in this document.

LONG FORM
VERSION 1.0

# PURCHASE ORDER

**1.** MATERIAL TO BE PROVIDED: Seller shall furnish the goods and material described below at the price or prices set forth opposite each item within the times stated below in accordance with the terms and provisions of the Prime Contract.

| Item | Description & Estimated Quantity | Delivery Date |
|------|----------------------------------|---------------|
| 001 | S/L Curtain Wall/ Storefront System: ES-7525/ ES-6025 | SEE ATTACHMENT 2 |
| 002 | SL Storefront System: ES 4520 | SEE ATTACHMENT 2 |
| 003 | Terrace Doors: ES-45T Thermally Broken Outswing | SEE ATTACHMENT 2 |
| 004 | Sliding Glass Door System: ES-SD450 Thermally Broken | SEE ATTACHMENT 2 |
| 005 | Fixed/Operable Window System: ES-P350/ ES-P450 Thermally Broken | SEE ATTACHMENT 2 |
| 006 | Medium Style Entrance Door System (Stock Lengths only) | SEE ATTACHMENT 2 |
| 007 | Glass: All exterior and interior glass | SEE ATTACHMENT 2 |
| 008 | Louver Framing: ES-6025 | SEE ATTACHMENT 2 |
| 009 | Misc. KD Extrusions: Custom Dies as needed for extruded trim MP-9 | SEE ATTACHMENT 2 |

| Total: | $4,430,291.00 | OK |
|--------|---------------|-----|

\* Approximate Amount of Material Contract (Based on Estimated Quantity)

Ship to: 5180 South Dakota Avenue, NE     Via: Container     Mark: As per floor and building

Deliver F.O.B. Destination, Freight Prepaid and Allowed, to: Job Site, 5180 South Dakota Ave, NE Washington, D.C.
Mail and Email Invoices:     Ranger Glass
19031 Westfield
Houston, TX 77073
chrisr@rangerglass.com

Terms: Payment within 10 days from payment from Owner and/or General Contractor.

**2.** ENTIRE AGREEMENT: This Purchase Order is the entire agreement between Ranger Glass East Coast and Seller with respect to the goods and materials and the Project, and supersedes all proposals, negotiations, stipulations, understandings, agreements, representations and warranties, if any, between Buyer and Seller with respect to the goods and materials and the Project which precede or accompany the execution of this Agreement. This Purchase Order consists of this Agreement, the Attachments listed in this Section 2 and the applicable terms, conditions, plans and specifications of the Prime Contract. Seller's acceptance is limited to the terms and conditions contained in this Purchase Order. Commencing performance or making deliveries or any acknowledgement of this Agreement by Seller shall constitute an acceptance of the terms of this Agreement by Seller. Buyer is to be bound only by the terms and conditions of this Purchase Order. Purchase Order Attachments are:

a) Attachment 1. ES Windows Scope of Work Dated 10/15/2015

b) Attachment 2. Progress Metrics dated 10/12/2015



| Please refer to our terms of sale |
| --- |

LONG FORM
VERSION 1.0

# PURCHASE ORDER

3. **CHANGES AND RIGHT TO TERMINATE:** Changes will be binding on Buyer only if in writing and signed by the Buyer

a) Buyer, for its convenience, may by written change order make any change, including, without limitation, additions or deductions in quantities ordered, changes in the specifications or drawings, changes in the time of delivery, or termination. Buyer may terminate or suspend, at its convenience, all or any portion of this order not shipped as of the date of termination or suspension of Seller's right to proceed with this Purchase Order. In the event of any change or termination, there shall be an equitable price adjustment by Buyer. If Seller maintains that Buyer's adjustment is not equitable, the price change shall be negotiated. In the event the parties cannot agree, the final determination shall be made in accordance with the dispute resolution provision of this Agreement. However, if unit prices have been designated as to materials maintained in the normal course of Seller's business as standard stock, such unit prices shall control all price adjustments for quantity changes. No change or termination shall relieve Buyer or Seller of any of their obligations as to any material shipped prior to Seller's receipt of the change, termination or suspension order. Any claim for adjustment by Seller hereunder must be asserted in writing within ten (10) days from Notice of the change or termination.

b) If the Owner shall order the Buyer to change, adjust, substitute, add to, delete from, suspend, or terminate the work included in this Purchase Order, Seller shall comply with Owner's order and the price or time of performance hereunder shall only be adjusted as allowed by Owner. If requested by Owner, Seller agrees to be bound to, and by, the dispute resolution procedure of the Prime Contract.

c) In the event of a termination for default, Buyer may, in addition to all other rights and remedies, purchase substitute items or services elsewhere and hold Seller liable for any and all excess costs incurred, including attorneys' fees and experts' and consultants' fees actually incurred.

4. **PAYMENT:** The price herein specified shall, unless otherwise expressly stated within the terms of this Agreement, include all taxes and duties of any kind levied by federal, state, municipal, or other governmental authorities, which either party is required to pay with respect to the production, sale, use, or shipment of the materials covered by this agreement, and all charges for packing, loading, insurance, shipping and unloading. Transportation costs are designated as part of the cost of the Seller and are only to be compensated for actual costs. Any and all damage to the goods and materials, until acceptance by Buyer at destination, shall be for the account of the Seller.

Seller's invoice shall set forth the items delivered to the project site, the date of delivery, and the unit cost and total costs of the items invoiced. Seller's right to payment is subject to the same payment provisions enforced upon Buyer by the terms of the Prime Contract. Buyer agrees to pay the seller for goods and materials actually delivered to the named destination under this Agreement, from funds received by Buyer, from Owner, for work of Seller as referenced in Buyer's Payment Applications, except payments withheld due to culpable acts or omissions of Seller.

5. **RISK OF LOSS:** Notwithstanding the terms of shipment, the risk of loss shall pass to Buyer only after delivery and acceptance by Buyer at the named destination.

6. **DELIVERY:** Time is of the essence of this Agreement. If no delivery date is specified on the face of this order, all deliveries of materials shall conform to the date or dates specified in writing from time to time by Buyer's representative. Should delivery for any reason fail to be timely, Seller shall be liable for all damages suffered by Buyer as a result of such failure, including, without limitation, any liquidated or other damages under Buyer's Prime Contract. In no event shall Seller be entitled to an extension beyond that allowed to Buyer under the terms of the Prime Contract.

7. **DEFAULTS:** If Seller fails to perform any of its obligations hereunder, Buyer shall be entitled to all remedies provided by law. If Seller becomes insolvent or makes an assignment for the benefit of creditors, or files or becomes subject to receivership or reorganization or bankruptcy proceedings, or becomes involved in labor difficulties, which in Buyer's opinion threaten Seller's ability to perform in a timely manner, Buyer may, in addition to any other rights or remedies it may have hereunder or at law, terminate the purchase order upon written notice to Seller; such termination shall be deemed a termination for default. Buyer's failure to notify Seller of a rejection of nonconforming materials or to specify with particularity any defect in nonconforming materials after rejection or acceptance thereof will not bar Buyer from pursuing any remedies for breach which it may otherwise have.

8. **INSPECTION:** Buyer shall have the right to inspect and test the materials at Seller's plant any time prior to shipment and to conduct additional inspections at any time after arrival at the job site. The making or failure to make any inspection of, or payment for or acceptance of, the materials shall not impair Buyer's right to later reject nonconforming materials or to avail itself of any other remedy to which Buyer may be entitled, notwithstanding Buyer's knowledge of the nonconformity.



LONG FORM
VERSION 1.0

# PURCHASE ORDER

its substantiality, or the ease of its discovery. Seller shall be liable for all additional inspection, reshipment and return cost on nonconforming materials. Seller shall not replace returned materials unless so directed by Buyer in writing.

9. **WARRANTIES:** Seller warrants to Buyer that it has fully reviewed the Attachments, specifications, drawings, samples or other descriptions contained in this Agreement and in the Prime Contract. Seller warrants to Owner, Architect, and Buyer that all materials and equipment furnished shall be new, unless otherwise explicitly specified in the Purchase Order Documents and that all Work shall be of good quality, free from faults and defects and shall be fit and appropriate for the purpose intended and in full conformance with the Attachments, specifications, performance standards, drawings, samples or other descriptions contained herein or in the Prime Contract for the period set forth in the Prime Contract. All Work not conforming to these requirements, including substitutions not properly approved and authorized, shall be considered defective. The warranty provided in this Section 9 shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Purchase Order Documents. The representations and warranties in this Section 9 shall survive the termination or completion of this Agreement. In addition to the foregoing warranties, Seller shall be required to provide all warranties required in the Prime Contract to be provided by Buyer that relate, in any manner, to the Seller's Work.

10. **INFRINGEMENT:** Seller shall pay all royalties and licensing fees arising in connection with the sale or use of materials hereunder. Seller further undertakes and agrees to defend, at Seller's expense, all suits, actions or proceedings in which Buyer, its successors, assigns, customers or users of its customer's products are made defendants for actual or alleged infringement of any U.S. or foreign letters patent, copyrights or trademarks resulting from the use or purchase of any materials furnished under this Agreement, and Seller agrees to pay or discharge any and all judgments or decrees which may be rendered in any such suit, action or proceeding against such defendants therein.

11. **COMPLIANCE:** Seller's performance shall in all ways strictly conform with all applicable laws, regulations, safety orders, labor agreements and working conditions to which it is subject including, but not limited to, all State, Federal and local non-discrimination in employment provisions, and all applicable provisions required by the Prime Contract and by Buyer's own internal safety program, and all local regulations and building codes. Seller shall execute and deliver all documents as may be required to effect or evidence compliance.

12. **INDEMNITY:** Seller assumes all risk in furnishing the materials and services ordered hereunder, and will indemnify, hold harmless and defend Buyer and Owner against any and all losses, damages, liabilities and claims of any kind whatsoever, including actual attorneys' fees and experts' or consultants' fees, which arise directly or indirectly out of the performance or nonperformance of this purchase order including, but not limited to, losses of any materials ordered hereunder and injuries to property and to persons, including death. This indemnity applies regardless of any active and/or passive negligent act or omission of Buyer or Owner or their agents or employees. Seller, however, shall not be obligated under this Agreement to indemnify Buyer or Owner for the sole negligence or willful misconduct of Buyer or Owner or their agents or employees. The indemnity set forth in this paragraph shall not be limited by the insurance requirements set forth in Paragraph 15.

12. **BOND:** Seller understands and agrees to furnish a Material Supply Bond, to be executed by a Surety approved by the Subcontractor. Bond shall be in 100% of the Purchase Order Value.

13. **ASSIGNMENTS, SETOFF:** Any delegation, subletting or assignment by operation of law or otherwise, of all or any portion of the obligations to be performed by Seller without the prior written consent of Buyer shall be void. In the event of any transfer, hypothecation or assignment by Seller, without Buyer's consent, of the right to receive all or any part of any payments due or to become due hereunder, Buyer may, at any time thereafter withhold any or all monies or payments due or to become due hereunder until final payment is due and all conditions precedent to such payment are satisfied. Buyer may, at its option setoff any amounts otherwise due from Buyer to Seller under this purchase order against any delinquent amounts or liabilities which are due to Buyer or its commonly controlled affiliates from Seller.

14. **APPLICABLE LAW – DEFINITIONS:** The definitions of terms used, interpretation of this Agreement and the rights of all parties hereunder, shall be governed by, and shall be interpreted in accordance with the laws of the state and locality in which the project is located without regard to any state's choice or conflict of law statutes. Whenever Buyer is not the ultimate consumer of the materials, all rights, benefits and remedies conferred upon Buyer hereunder shall accrue and be available to and are for the express benefit of any successors in interest to the materials, including the ultimate consumer of the materials. The materials means the supplies, drawings, data and other property and all services, including design, delivery, installation, inspection and testing specified or required to furnish the materials or services ordered.



LONG FORM
VERSION 1.0

# PURCHASE ORDER

15.   **INSURANCE AND CLAIMS:** If Seller or its employees or agents come onto Buyer's premises or project in connection with this purchase order, Seller agrees to carry (i) Comprehensive General Liability Insurance covering personal injuries (including death) in the amount of $1,000,000.00 per occurrence, and (ii) automobile liability insurance covering bodily injuries (including death) in the amount of $1,000,000.00 per person, and $1,000,000.00 per occurrence, property damage in the amount of $1,000,000.00 per occurrence, and products liability in the amount of $1,000,000.00. Seller further agrees to provide and maintain Workers' Compensation Insurance in conformity with the laws of the state in which such premises or project is located and Employer's Liability Insurance in the amount of $500,000.00 per occurrence if requested by Buyer, Seller shall submit written proof of such insurance to Buyer prior to entrance on Buyer's premises or project. Seller shall supply such bonds as are required by Buyer.

16.   **COMPLIANCE WITH LICENSE LAW:** Sellers shall have all licenses required by the appropriate authorized authority, and maintain said licenses during the full term of this purchase order.

17.   **DISPUTES:** Buyer may, at its sole option, elect to arbitrate any dispute, the value of which is less than $50,000.00, arising out of or related to this purchase order or the breach thereof, in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. The existence of a dispute between Buyer and Seller, not involving a material default by Buyer in performance of a condition precedent to Seller's performance, shall not relieve Seller of its obligation to perform under this Agreement. In the event either party becomes involved in litigation or arbitration arising out of this Agreement, the prevailing party shall be fully compensated for the cost of its participation in such proceedings, including the cost incurred for attorneys' fees and experts' fees. Unless judgment goes by default, the attorneys' fee awarded shall not be computed in accordance with any court schedule, but shall be such as to fully reimburse all attorneys' fees actually incurred in good faith, regardless of the size of a judgment, it being the intention of the parties to fully compensate for all attorneys' fees and experts' fees paid or incurred in good faith. Disputes not arbitrated pursuant to this provision shall be litigated.

BUYER:                                              SELLER:

RANGER GLASS EAST COAST

_____                    _____
(Signature)                                        (Signature)

_____                    _____
(Typed/Printed Name)                            (Typed/Printed Name)

_____                    _____
(Title)                                              (Title)

# USPS Tracking®

FAQs  ›  (http://faq.usps.com/?articleId=220900)

Track Another Package  **+**

**Tracking Number:** 70161970000110281099

Remove ✕

**On Time**

**Expected Delivery on**

**MONDAY**

**23** OCTOBER
2017 ⓘ

by

**8:00pm** ⓘ

## ✅ **Delivered**

October 23, 2017 at 7:20 am
Delivered
HARTFORD, CT 06183

---

**Tracking History**                                              ⌃

October 23, 2017, 7:20 am
Delivered
HARTFORD, CT 06183
Your item was delivered at 7:20 am on October 23, 2017 in HARTFORD, CT 06183.

October 23, 2017, 5:23 am
Available for Pickup
HARTFORD, CT 06183

October 23, 2017, 4:14 am
Arrived at Unit
HARTFORD, CT 06183

October 23, 2017, 3:46 am
Departed USPS Regional Facility
SPRINGFIELD MA NETWORK DISTRIBUTION CENTER

October 22, 2017, 7:20 am
Arrived at USPS Regional Destination Facility



**PLAINTIFF'S
EXHIBIT**
_____9_____

SPRINGFIELD MA NETWORK DISTRIBUTION CENTER

October 21, 2017, 9:27 am
In Transit to Destination
On Its way to HARTFORD, CT 06183

October 20, 2017, 11:27 pm
Arrived at USPS Regional Origin Facility
GAITHERSBURG MD DISTRIBUTION CENTER

October 20, 2017, 7:30 pm
Departed Post Office
ROCKVILLE, MD 20851

October 20, 2017, 3:02 pm
USPS in possession of item
ROCKVILLE, MD 20851

Product Information                                                    ⌄

See Less ⌃

# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

FAQs (http://faq.usps.com/?articleId=220900)

**Scott Myers**

| | |
|---|---|
| **From:** | Scott Myers |
| **Sent:** | Wednesday, October 25, 2017 10:22 AM |
| **To:** | 'michael.mcnamara@pillsburylaw.com'; 'MMorise@Foulgerpratt.com' |
| **Subject:** | Payment Bond Notice |
| **Attachments:** | Art.Place.Notice.pdf |

Mr. Morise and Mr. McNamara,

Attached please find a courtesy copy of the Payment Bond Notice mailed out last week.

Sincerely,

Scott M. Myers
Whittaker & Associates, P.C.
1010 Rockville Pike, Ste. 607
Rockville, Maryland 20852
301-838-4502 voice
301-838-4505 fax
scott@whittaker-law.com
www.whittaker-law.com

THIS MAY BE AN ATTEMPT TO COLLECT A DEBT BY A DEBT COLLECTOR AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

This transmission contains information which may be confidential and/or privileged. The information is intended to be for the exclusive use of the individual or entity named above. If you are not the intended recipient, be advised that any disclosure, copying, distribution or other use of this information is strictly prohibited. If you have received this transmission in error, please notify us by telephone (301)838-4502 or by email (scott@whittaker-law.com) immediately.



PLAINTIFF'S
EXHIBIT
10



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

C.I. Energia Solar S.A. E.S. Windows
_____
Plaintiff

vs.                                                                Case Number _____

Ranger Specialized Glass, Inc.
_____
Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Shawn C. Whittaker                                          _Clerk of the Court_
_____
Name of Plaintiff's Attorney

1010 Rockville Pike, Suite 607                          By _____
_____                                Deputy Clerk
Address
Rockville, MD 20852

301-838-4502                                                    Date _____
_____
Telephone
如需翻译, 请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시오.           የትርጉም እርዳታ ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                          Super. Ct. Civ. R. 4





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

_____
                              Demandante

        contra

                                        Número de Caso: _____

_____
                              Demandado

**CITATORIO**

Al susodicho Demandado:

    Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

    A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días dé haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                    *SECRETARIO DEL TRIBUNAL*

_____
Nombre del abogado del Demandante

                                    Por: _____
_____               Subsecretario
Dirección

                                    Fecha _____
_____
Teléfono
如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면(202) 879-4828 로 전화주십시오        ለትርጉም ይህንን ቁጥር ይደውሉ (202) 879-4828 ያስፈልጋታል

    IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

    Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

                        Vea al dorso el original en inglés
                        See reverse side for English original

CV-3110 [Rev. June 2017]                                    Super. Ct. Civ. R. 4



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

C.I. Energia Solar S.A. E.S. Windows
_____
Plaintiff

vs.                                                      Case Number _____

Ranger Glass East Coast, Inc.
_____
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Shawn C. Whittaker
_____          _Clerk of the Court_
Name of Plaintiff's Attorney

1010 Rockville Pike, Suite 607
_____     By _____
Address
Rockville, MD 20852                                                        Deputy Clerk

301-838-4502
_____     Date _____
Telephone
如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시오.       የአማርኛ ትርጉም አስፈላጊ ከሆነ (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

_____
                                 Demandante

contra

_____          Número de Caso: _____
                                 Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                       *SECRETARIO DEL TRIBUNAL*

_____
Nombre del abogado del Demandante

                                       Por: _____

_____
Dirección                                          Subsecretario

_____
                                       Fecha _____
Teléfono
如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828
만약 번역을 원하시면 (202) 879-4828 로 전화주십시오       የትርጉም እርዳታ ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                       Super. Ct. Civ. R. 4



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
Telephone: (202) 879-1133 Website: www.dccourts.gov

C.I. Energia Solar S.A. E.S. Windows
_____
Plaintiff

vs.

Case Number _____

Foulger−Pratt Contracting, LLC
_____
Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Shawn C. Whittaker
_____
Name of Plaintiff's Attorney

*Clerk of the Court*

1010 Rockville Pike, Suite 607
_____
Address
Rockville, MD 20852

By _____

Deputy Clerk

301−838−4502
_____
Telephone

Date _____

如需翻譯，請打電話 (202) 879-4828       Veuillez appeler au (202) 879-4828 pour une traduction       Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시오.       ነገር ግን   ለትርጉም አስተርጓሚ ከፈለጉ (202) 879-4828   ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]

Super. Ct. Civ. R. 4





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

_____
                                        Demandante

        contra

                                                        Número de Caso: _____

_____
                                        Demandado

**CITATORIO**

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en caso de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

*SECRETARIO DEL TRIBUNAL*

Nombre del abogado del Demandante
_____

                                        Por: _____
Dirección                                                Subsecretario
_____

                                        Fecha _____
Teléfono
如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202) 879-4828 로 전화하십시오         የትርጉም እርዳታ ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                Super. Ct. Civ. R. 4



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

C.I. Energia Solar S.A. E.S. Windows
_____
Plaintiff

vs.

Case Number _____

Berkley Insurance Company
_____
Defendant

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Shawn C. Whittaker
_____
Name of Plaintiff's Attorney

1010 Rockville Pike, Suite 607
_____
Address
Rockville, MD 20852

301-838-4502
_____
Telephone

_Clerk of the Court_

By _____
Deputy Clerk

Date _____

如需翻译，请打电话 (202) 879-4828       Veuillez appeler au (202) 879-4828 pour une traduction       Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시오.        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                 Super. Ct. Civ. R. 4





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
DIVISIÓN CIVIL
Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

_____
                              Demandante

contra

                                                  Número de Caso: _____

_____
                              Demandado

**CITATORIO**

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                        *SECRETARIO DEL TRIBUNAL*

_____
Nombre del abogado del Demandante

                              Por: _____

_____
Dirección                                    Subsecretario

                              Fecha _____
_____
Teléfono
如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828
만일 번역을 원하시면(202) 879-4828로 전화주십시요          የአማርኛ  ተርጓሚ  ለማግኘት  (202) 879-4828  ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                        Super. Ct. Civ. R. 4



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

C.I. Energia Solar S.A. E.S. Windows
_____
                                    Plaintiff

                vs.
                                                        Case Number _____

Travelers Casualty and Surety Company of America
_____
                                    Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Shawn C. Whittaker
_____
Name of Plaintiff's Attorney

1010 Rockville Pike, Suite 607
_____
Address
Rockville, MD 20852

301-838-4502
_____
Telephone

*Clerk of the Court*

By _____
                                    Deputy Clerk

Date _____

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

법역을 원하시면, (202) 879-4828로 전화주십시오.      ፣አማርኛ፡ ትርጉም፡ ለማግኘት፡ (202) 879-4828 ፡ ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                                    Super. Ct. Civ. R. 4





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

_____
                                                    Demandante

contra

                                                    Número de Caso: _____

_____
                                                    Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                        *SECRETARIO DEL TRIBUNAL*

_____
Nombre del abogado del Demandante

                                        Por: _____

_____
Dirección
                                                    Subsecretario

_____

                                        Fecha _____

_____
Teléfono

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

만약에 번역을 원하시면 (202) 879-4828 로 전화해주십시오      ያማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                    Super. Ct. Civ. R. 4



**Superior Court of the District of Columbia**
CIVIL DIVISION
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

C.I. Energia Solar S.A. E.S. Windows
_____
Plaintiff

vs.

Case Number **2018 CA 000906 B**

Ranger Glass East Coast, Inc.
_____
Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Shawn C. Whittaker
_____
Name of Plaintiff's Attorney

1010 Rockville Pike, Suite 607
_____
Address
Rockville, MD 20852

301-838-4502
_____
Telephone

*Clerk of the Court*

By _____
Deputy Clerk

Date **02/07/2018**

如需翻译，请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주세요.      ආ෮ඁ෮෮ ෮෮෮෮ ෮෮෮෮෮ (202) 879-4828 ෮෮෮෮෮

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]

Super. Ct. Civ. R. 4





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

_____
                                    Demandante
          contra

_____        Número de Caso: _____
                                    Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                         _SECRETARIO DEL TRIBUNAL_

_____
Nombre del abogado del Demandante

                                         Por: _____

_____
Dirección                                              Subsecretario

_____
                                         Fecha _____

Teléfono
如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828
번역을원하시면(전화)(202) 879-4828 로연락하십시오      ፣ [Amharic] (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO_.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                         Super. Ct. Civ. R. 4



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Telephone: (202) 879-1133 • Website: www.dccourts.gov

C.I. ENERGIA SOLAR S.A.E.S. WINDOWS
Vs.                                                    C.A. No.      2018 CA 000906 B
RANGER SPECIALIZED GLASS, INC. et al

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the summons, the complaint, and this Initial Order and Addendum. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in Super. Ct. Civ. R. 4(m).

(3) Within 21 days of service as described above, except as otherwise noted in Super. Ct. Civ. R. 12, each defendant must respond to the complaint by filing an answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in Super. Ct. Civ. R. 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an initial scheduling and settlement conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than seven business days before the scheduling conference date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Robert E. Morin

Case Assigned to: Judge JOHN M CAMPBELL
Date:  February 7, 2018
Initial Conference: 9:30 am, Friday, May 11, 2018
Location:  Courtroom 519
            500 Indiana Avenue N.W.
            WASHINGTON, DC  20001

CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Actions Branch. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief   Judge   Robert   E.   Morin